### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

## PHILIP CLARK *vs.* BOSTON & ALBANY RAILROAD COMPANY.

Suffolk.   Nov. 14, 1878. — Nov. 11, 1879.   COLT, J., did not sit.   MORTON, J., absent.

In an action against a railroad corporation for personal injuries sustained by the plaintiff by being struck by a train of cars at a place where the railroad crossed a highway at grade, the plaintiff's evidence showed that he was employed by a corporation other than the defendant to watch the track and give notice when any cars or locomotive engines of either corporation were about to pass over the highway; that he saw the smoke of the locomotive engine when it first came in sight, went to the crossing and gave the usual signal; that after the locomotive engine passed he looked up and down the track, and saw nothing, and started to recross the track and was struck by the train of cars which was making a flying switch, and which came upon him from behind; that the usual signal for cars making a flying switch was not given, but one was given indicating that only a locomotive engine or a train of cars was coming, and there was no brakeman on the cars; that a person could see up the track from where he stood nearly seven hundred feet; that he could not tell whether any smoke prevented his seeing the cars coming, but if it did he should have waited until it passed away. *Held*, that the action could not be maintained.

TORT for personal injuries occasioned to the plaintiff by being struck by a car, run and managed by the defendant over the track of the Eastern Railroad Company, at or near the place where said track crosses Saratoga Street at grade in Boston. Trial in this court, before *Morton*, J., who allowed a bill of exceptions in substance as follows:

VOL. XIV.                         1

The plaintiff was a flagman, employed and paid by the Eastern Railroad Company, upon an understanding between that company and the defendant that the former should provide such flagman, and his duty was to watch the track and give notice when any cars or locomotives, whether of said company or of the defendant, were about to cross the street. There was a small building called a flag-house, situated near the side of Saratoga Street, south of the same, and east of the railroad, with a door fronting on the railroad, and windows on each side. The accident occurred about ten or eleven o'clock in the forenoon of a cold day in December. The train in question consisted of a locomotive and three oil cars, the latter being plain, uncovered platform-cars without sides, each having on it a tank about three to four feet high, cylinder-shaped, and appearing somewhat like a steam-boiler. The cars approached from the north, from the direction of Revere, and, as the plaintiff walked from Saratoga Street to the flag-house, they came behind him, partly towards his left side, and struck him, causing the injuries complained of.

Patrick Rowe testified as follows: "I was about thirty feet off from where the plaintiff was standing, on the same side with him. The first thing I heard was the engine coming, and I pulled up my horse about thirty feet off. I saw the plaintiff flagging the engine past. I heard the whistle and saw the engine pass. The plaintiff looked down the track, and up afterwards, and rolled up his flag, and walked across the track, kind of slanting, towards the flag-house. I started up my horse about ten or fifteen feet, and then I saw the oil cars, and pulled up again, because I saw the cars coming. The plaintiff was then crossing the track. I did not hear any noise of the train of oil cars until I saw them, and did not see any brakeman. I cannot exactly tell how long it was before the oil cars came along after the engine passed, — a second or so. I think it might be between a minute or two. I saw the cars strike the plaintiff on the right shoulder, and turn him round and knock him down; he had one foot between the tracks and the other over. I think there was difficulty in his seeing the cars, because there was a great deal of smoke flying. I could not see them until the smoke went away. It might be a minute or two after I saw the cars coming before the plaintiff was hit. He was walking across the track

kind of sideways. The cars were coming behind him. I don't know as he could have seen them very well if he had turned round."

Richard Welsh testified as follows: "I am employed by the Eastern Railroad Company as flagman at another crossing, about eight hundred feet away from the plaintiff at the time he was struck. I saw the locomotive and oil cars go by me. Cannot state whether there was any brakeman on the oil train or not. There is a switch there, and the engine comes down one way and the man throws the switch to let the cars go the other. I was watching for this train to come down there, and knew they were going to make a flying switch. I saw the man at the switch to switch in the oil tanks. I saw the switch thrown and the engine pass, and saw the cars coming on the other track. They passed me. When I saw the engine I did not see the cars behind it. I knew it was going to make a flying switch at the time. I was looking out for my own crossing at the time, without thinking an accident would happen. I knew the cars were coming behind the engine. The switch is about three hundred feet from Saratoga Street. Did not see the cars when I saw the engine coming. I knew they were coming." The witness in answer to the question whether there was any signal for a flying switch, and, if so, what it was, answered: "Well, that is only a signal the men have among themselves. He will whistle for the switch; he will make one whistle for a locomotive or train, and two whistles for a flying switch, and the switchman understands that and will go by it. I know it as well as the switchman. All flagmen and everybody knows when a flying switch is coming. I did not hear the signal that day. Whether it was given or not I do not know. I do not recollect hearing any signal given for the switch that day; whether it was given or not I do not know."

Frank E. Pray testified that a person standing upon the west or northwest side of the track, near the track where it crosses Saratoga Street, could see up the track nearly seven hundred feet, towards Revere; that it was nearly a straight line.

Harriet Kirkwood testified that she could see the crossing at Saratoga Street quite plainly from her house; that she saw the accident; that she heard one whistle, and saw the engine pass ·

that the cars came along a minute and a half or two minutes after the engine; that, after the engine passed, she saw the plaintiff roll up his flag and walk leisurely across the track; that there was no brakeman on the cars that she could see; that she did not see the plaintiff when he was struck, as the cars hid him from her sight, but saw that he must be struck; that she had not the slightest difficulty in seeing the cars from where she was; that there was no difficulty in the plaintiff's seeing them for a certain distance, and she supposed he could see them for as great a distance as she could; and that there was nothing to obstruct her view of the cars, and she did not see any smoke.

The plaintiff testified that he had been flagman at that crossing about twelve months; that the first he saw of the train was the smoke of the engine, and he went out to the crossing and flagged it until she went by; that he heard one whistle; that locomotives frequently passed there without cars; that, after the locomotive had passed, he looked up and down the track, but saw nothing and expected nothing, and started to go to the flag-house, when he was struck by the train of cars; that he had never seen a flying switch made coming that way during all the time he had been there; that he could not swear whether there was any smoke or steam that day to interfere with his seeing or not, but that, if there was, he should have waited until it passed away; that he waited about the usual time.

Upon this evidence, the judge ruled that the jury would not be justified in finding for the plaintiff; and directed a verdict for the defendant. The plaintiff alleged exceptions.

*S. B. Allen*, for the plaintiff, cited *French* v. *Taunton Branch Railroad*, 116 Mass. 537.

*G. S. Hale*, for the defendant.

ENDICOTT, J. The ruling of the presiding judge must be sustained. The plaintiff undertook to perform a duty, which he failed to perform, and, while thus neglecting his duty, he received the alleged injury.

As flagman, he was employed to give notice in the usual man ner, by standing on the crossing with his flag, when any cars or engines, whether of the Eastern Railroad Company or of the defendant, were about to cross the street. From the flag-house near the crossing he could see up the track seven hundred feet.

On this occasion he saw the smoke of the engine when it first came in sight, and at once went to the crossing with his flag. After the engine had passed he says that he looked but saw nothing; and walked across the track towards the flag-house. While so doing he was struck by the train of cars, which had been detached from the engine, and was following it over the crossing. He simply failed to see what it was his duty to see, and failed to give the notice he was there to give.

One of the witnesses, who testified in his behalf, was at the crossing in a carriage when the engine passed. He saw the plaintiff fold up his flag and walk towards the flag-house. The witness thereupon started his horse to cross the track, but, seeing the cars coming, at once stopped, and saw them strike the plaintiff on the shoulder while crossing the track directly in front of him. This witness also testified that he thought there was a difficulty in the plaintiff's seeing the cars, as there was a great deal of smoke flying. But the plaintiff stated that, if the smoke or steam from the engine had interfered with his seeing, he should have waited until it passed away.

*Judgment on the verdict.*