Argued October 17, reversed December 27, 1916.

## STATE v. BRANSON.

(161 Pac. 689.)

**Criminal Law—Evidence—Admissibility.**

1. In a murder case, where it appeared that the footprints of a man and woman and a woman's hair-rat were found in the vicinity of the body, evidence that a codefendant, wife of deceased, had been seen by several witnesses near the scene of the crime shortly after a shot had been heard, that deceased was jealous of a supposed intimacy between defendant and his wife to defendant's knowledge, and of subsequent comparison of the hair-rat with those used by the wife, was admissible as a narration of the circumstances so closely con-

nected with the issue as to be a part of the *res gestae* and tending to show joint action, and was not evidence of declaration and acts of a co-conspirator before proof of conspiracy forbidden by Section 727, subdivision 6, L. O. L.

**Homicide—Evidence—Admissibility.**

2. Testimony of witness as to a comparison of a hair-rat found in the vicinity of the body with those found by them at the house of a codefendant, wife of deceased, was properly permitted when the witnesses testified that the "rats" submitted in court were not the ones compared by them at the home of the codefendant.

**Homicide—Evidence—Admissibility.**

3. Evidence that defendant had been seen talking to a codefendant, wife of deceased, on numerous occasions in front of her home, when her husband was absent, and that she had been seen standing on the bank of the river 100 yards from the bridge on which defendant was standing, was admissible, as going directly to the conduct of the defendant.

**Homicide—Evidence—Admissibility.**

4. Evidence of comparison made between woman's tracks found at the scene of the homicide with shoes worn by codefendant, wife of deceased, was properly admitted, where the shoes compared were not in court.

**Criminal Law—Trial—Statements of Counsel.**

5. The action of the court in permitting the district attorney, in his opening statement to the jury, to announce his intention to prove that defendant and codefendant, wife of deceased, had been seen together under peculiar circumstances, although with the purpose of raising a suspicion of adultery and thereby establishing a motive for the killing, was not error.

> [As to limitations upon the right of argument of counsel in criminal trials, see note in 46 Am. St. Rep. 23.]

**Witnesses—Cross-examination—Impeachment.**

6. Defendant's witness was properly questioned on cross-examination as to a purported conversation in which the witness was supposed to have advised the codefendant, wife of deceased, that she and defendant would be arrested, separated, and each misled into thinking that the other had confessed and advising her and requesting another to remain silent as to such advice.

**Witnesses—Impeachment—Rebuttal.**

7. Where defendant's witness on cross-examination denied statements advising codefendant, wife of deceased, that she and defendant would be arrested, separated and misled into believing each had confessed, evidence in rebuttal that such statements were made was admissible.

**Criminal Law—Appeal and Error—Review—Instructions.**

8. The refusal of a requested instruction fully covered by the given instructions was not error.

Criminal Law—Trial—Instructions.

9. Where there was no evidence of a conspiracy or common design between defendant and codefendant to murder, a qualification of an instruction on alibi that, if defendants were acting together with a common design to bring about the death of deceased, it would not be necessary for both of them to have been actually present at the crime but each is bound by the act of the other in furtherance of the common design, was error.

Criminal Law—Review—Reversal.

10. Although Article VII, Section 3, of the Constitution, as amended in 1911, provides that, if the Supreme Court shall be of opinion that the judgment of the court appealed from was such as should have been rendered in the case, such judgment should be affirmed, notwithstanding any error committed during the trial in a murder case, where the court erroneously instructed the jury as to conspiracy between codefendants, the appellate court may not determine what influence the elimination of the question of conspiracy would have upon the jury's determination, and judgment must be reversed.

From Yamhill: HARRY H. BELT, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

William Branson and Anna Booth were jointly indicted for murder in the second degree charged to have been committed in the killing of William Booth on October 8, 1915.   Separate trials having been demanded by the defendants, the defendant Branson was placed upon trial, and from a verdict of guilty as charged and a judgment thereon he prosecutes this appeal.                                    REVERSED.

For appellant there was a brief over the name of *Messrs. McCain, Vinton & Burdett,* with oral arguments by *Mr. W. T. Vinton* and *Mr. James E. Burdett.*

For the State there was a brief with oral arguments by *Mr. George M. Brown,* Attorney General, and *Mr. Roswell L. Conner,* District Attorney.

MR. JUSTICE BENSON delivered the opinion of the court.

The first eight assignments of error are so closely related as to be susceptible of discussion together.

To clearly comprehend defendant's contentions, it is
necessary to make a brief statement of the evidence
submitted by the prosecution. William Booth, the vic-
tim of the alleged homicide, was the husband of the
defendant Anna Booth; their home being in the village
of Willamina, upon the east bank of the Willamina
River. The defendant Branson, a young man 23 years
of age, resided with his parents in the same village.
On the afternoon of October 8, 1915, at about 1:30
P. M., some witnesses heard a shot fired near the river
at a point on the premises of one Yates, about a mile
and a half northwest of Willamina, and near the
county road running past the Yates place. At about
3:30 P. M. a young man named Carter discovered the
dead body of William Booth lying on the bank of the
river with one hand and perhaps other portions of
the corpse in the water. He immediately hastened to
the village and notified the authorities. An inquest was
held, and in the vicinity of the body the footprints of
a man and a woman were found in the loose soil. A
"woman's hair-rat" was also found there.

1. Upon the trial evidence was admitted, over the
objection of the defendant, tending to prove that Will-
iam Booth was jealous of the supposed intimacy be-
tween his wife and the defendant; that this jealousy
was well known to Branson; that near 1 o'clock on
the afternoon of the homicide witnesses saw Anna
Booth walking along the county road in the direction
of the spot where the body of William Booth was sub-
sequently found; that a few minutes later the defend-
ant was seen going in the same direction; that they
each passed Axel Nelson, who was sitting in his wagon
on the highway talking to a woman who stood in her
doorway; and that Nelson, within a few minutes after
defendant passed, drove on in the same direction to

his home some four miles west of Willamina, but did
not see either defendant again. Mrs. Yates was per-
mitted, over the objection of defendant, to testify that
she heard a shot near the river bank at the foot of her
garden; that she went down in that direction to see
about it, and when near the gate opening into the high-
way she saw Anna Booth in the road at a point near
where the body of Booth was afterward discovered.
Clay Rowell was permitted to testify that on the after-
noon of the homicide he was fixing a fence along the
road a short distance west of the place where the kill-
ing occurred; that about 1:30 P. M. he heard a shot
fired, and that within 15 or 20 minutes thereafter Anna
Booth passed him going west. Other witnesses tes-
tified to the circumstance of visiting the home of Anna
Booth on the morning after the homicide and making
a comparison of the "hair-rat" found at the scene of
the tragedy with others which were at the time in the
possession and use of the defendant Anna Booth.
Defendant urges that all of the evidence was errone-
ously admitted, for the reason that it violates the
statutory rule that evidence of the declaration or act
of a conspirator cannot be given against a co-conspira-
tor until after proof of a conspiracy: Subdivision 6,
Section 727, L. O. L. It will be noticed, however, that
the testimony referred to does not involve any decla-
rations of Anna Booth, and merely a narration of cir-
cumstances so closely connected with the vital issue
upon trial as to be a part of the *res gestae.*

In *Commonwealth* v. *Kaiser,* 184 Pa. 493, 499 (39
Atl. 299, 300), the court says:

"The commonwealth claimed a conspiracy, but the
court held the evidence insufficient to sustain that con-
tention, but admitted evidence of the presence and
identification of accomplices. The question of accom-
plices and what they did is a different one from con-

spiracy, but the two issues run closely together in the mode of proof and the evidence to establish them."

Again, in *Fitzpatrick* v. *United States,* 178 U. S. 304 (44 L. Ed. 1078, 20 Sup. Ct. Rep. 944), we note the following language:

"As there was some evidence tending to show a joint action on the part of the three defendants, any fact having a tendency to connect them with the murder was competent upon the trial of Fitzpatrick. The true distinction is between statements made after the fact, which are competent only against the party making the statement, and facts connecting either party with the crime which are competent as a part of the whole transaction. In the trial of either party it is proper to lay before the jury the entire affair, including the acts and conduct of all the defendants from the time the homicide was first contemplated to the time the transaction was closed. It may have a bearing only against the party doing the act, or it may have a remoter bearing upon the other defendants; but, such as it is, it is competent to be laid before the jury."

In *Musser* v. *State,* 157 Ind. 423 (61 N. E. 1), it is said:

"The rule urged by appellant in regard to the declarations and acts of a conspirator made after the object of the conspiracy has been accomplished has no application to such evidence. The evidence was concerning a physical fact, and tended to prove the guilt of Marshall, and when considered in connection with all the other evidence in the case also tended to prove the guilt of appellant. There was no doubt that a homicide had been committed. The question of the guilt or innocence of appellant was to be determined by the jury. There was evidence tending to show that three persons were present at the commission of the crime, and any fact tending to connect any one of them with the crime was competent evidence against

the others.   That evidence of this character is admissible is well settled.''

It would seem that the authorities make a marked distinction between evidence tending to show a conspiracy and that which tends simply to disclose joint action.   Upon the latter theory the evidence was properly admitted.

2. It is also contended that the testimony in regard to the comparison of the ''rats'' was incompetent, because the witnesses did not qualify as experts, and, if not experts, the jury was the proper authority to make the inspection.   In reference to this point, it may be said that the witnesses for the state testified that the ''rats'' submitted in court were not the ones compared by them at the home of Anna Booth, and under such circumstances it was proper for the court to permit them to testify as to their former comparison.

3, 4. It is next urged by defendant that the court erred in permitting witnesses to testify, over his objection, to having seen him on numerous occasions talking to Anna Booth in front of her home when her husband was absent, and upon one occasion seeing her standing upon the bank of the river at a point about 100 yards above the bridge and the defendant standing upon the bridge smoking a cigarette.   It is not for us to discuss the weight, effect or value of this evidence, but since it goes, not to the acts of the codefendant, but directly to the conduct of this defendant, there was no error in admitting it.   What has been said in reference to the ''rats'' may well be applied to the evidence in regard to the woman's tracks found at the scene of the homicide and measurements and comparisons thereof with shoes worn by Anna Booth.   The evidence was properly admitted.

5. Complaint is also made that the court committed error in permitting the district attorney, in his opening statement to the jury, to announce his intention to prove that the two defendants were seen together under peculiar circumstances, since its purpose was to raise a suspicion of adultery and thereby establish a motive for the killing. As we have already suggested that the evidence referred to was properly admitted, no error can be based thereon.

6, 7. The next assignment pertains to the questions and answers whereby it was sought to impeach the testimony of Isabel Branson. Briefly stated, the cross-examination of this witness was directed to a purported conversation alleged to have been held between the witness and Anna Booth on the day before the preliminary examination of both defendants before a committing magistrate in which the witness was supposed to have advised Mrs. Booth that she and the defendant Branson would both be arrested, put into separate cells, and each misled into believing that the other had confessed, and advising her to remain silent, and also requesting Maude Fuqua to keep quiet as to such advice. The witness denied making such statements, and in rebuttal the witness Maude Fuqua testified to their having been made. In the case of *State v. Olds*, 18 Or. 440 (22 Pac. 940), this court says:

"The state had the right, on the cross-examination, to ask this witness anything that would show his interest in the result of the trial, and anything he did in aid of the defendant about the trial, for the purpose of enabling the jury to properly weigh his evidence, and to intelligently pass upon his credibility."

The same doctrine is quite clearly stated in *State v. Finch*, 54 Or. 482 (103 Pac. 505), and we conclude that there was no error in admitting the evidence.

8. We now come to the consideration of the charge to the jury. Among others, the defendant requested the court to instruct the jury as follows:

"If you should infer from proven circumstances alone that adulterous relations existed between the defendant William Branson and Anna Booth, you cannot base upon such inference the further inference of the slaying of William Booth by the defendant William Branson. In other words, inferences can only arise from facts legally proved and not from other inferences."

The court refused the request, and this is assigned as error. All that needs to be said in relation to this assignment is that the substance of the requested instruction is fully covered by the charge which was given, and consequently it was not error to decline a repetition thereof.

9. We shall next consider the court's instruction upon the subject of an alibi. The defendant requested that the jury be instructed as follows:

"You are instructed that one of the defenses interposed by the defendant in this case is what is known as an alibi; that is, that the defendant was at another place at the time of the commission of the crime. The court instructs you that such defense is as proper and legitimate if proven, as any other, and all evidence bearing upon that point should be carefully considered by you. If, in view of all the evidence, you have a reasonable doubt as to whether the defendant was in some other place when the crime was committed, then you should give the defendant the benefit of the doubt. Regarding the defense of an alibi, you are instructed that the defendant is not required to prove that defense beyond a reasonable doubt, to entitle him to an acquittal, but is sufficient if the evidence raises a reasonable doubt of his presence at the time and place of the commission of the crime charged."

The court gave the substance thereof, but with vital modifications, in the following form:

"You are instructed that one of the defenses interposed by the defendant in this case is what is known as an alibi; that is, that the defendant Branson was at another place at the time of the commission of the alleged crime. This court instructs you that such defense is as proper and legitimate, if proven, as any other and all evidence bearing upon that point should be carefully considered by you. If, in view of all the evidence, you have a reasonable doubt as to whether the defendant was at some other place when the crime was committed, then you should give the defendant the benefit of that doubt, and find the defendant not guilty, subject, however, to the other instructions which I will give you relative to the law of this case. Regarding the defense of an alibi, you are instructed that the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to acquittal, but it is sufficient if the evidence raises a reasonable doubt of his presence at the time and place of the commission of the crime charged. In this case, however, you should bear in mind the instruction which I have heretofore given you that if the defendant and Anna Booth were acting together with the common design to bring about the death of William Booth, in the manner and as charged in the indictment, it would not be necessary for both of them to have been actually present at the place and at the time of the alleged crime, for, as I have stated to you before, each codefendant is bound by the act of the other in the furtherance and execution of the common design."

This is undoubtedly a correct and excellent abstract exposition of law, and, if the record disclosed any evidence of a common design or conspiracy to take the life of William Booth, there would be no doubt whatever of the correctness of the charge. We have searched the record in vain for a scintilla of evidence tending to disclose any conspiracy or common design

to perpetrate a homicide. This court, in a long line of decisions beginning with *Morris* v. *Perkins,* 6 Or. 350, has held that it is error to submit to a jury questions of fact upon which there is no evidence. That the concluding portions of the instruction quoted is error cannot, therefore, be doubted, and to determine that it was prejudicial to the defendant's interest is manifest from the mere reading.

10. It has been urged that, even though the instruction is error, the judgment should be affirmed under the authority of Section 3 of Article VII of the state Constitution as amended in 1911 (Laws 1911, p. 7), wherein it is provided that:

"If the Supreme Court shall be of opinion, after consideration of * * the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial."

To answer this suggestion fully would involve such a discussion of the value and effect of the evidence in the case as would, under the circumstances, be improper. We thus confine ourselves to saying that an elimination of the question of conspiracy might well have a direct influence upon a jury's determination of the decree of crime involved in the acts as a crime, and such determination must always remain a function of the jury rather than of the court.

It follows that the judgment must be reversed and the cause remanded for a new trial.          REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE MCBRIDE concur.