## WHITE *v.* EAST SIDE MILL CO.*

### (161 Pac. 969; 164 Pac. 736.)

**Appeal and Error—Record—Failure to File Transcript—Motion to Dismiss—Affidavits.**

1. The recitals of a *nunc pro tunc* order as to an oral order previously made extending the time for filing transcript on appeal imports absolute verity, and cannot be contradicted, on motion to dismiss the appeal for .failure to file transcript, by affidavits of counsel as to what actually occurred at the time of the previous order.

**Appeal and Error—Transcript—Time for Filing—Extension.**

2. Under Act Feb. 28, 1913 (Laws 1913, p. 619), providing that the trial court or Supreme Court may enlarge the time for filing the transcript, but that such order shall be made within the time allowed to file the transcript, an order extending the time for filing the transcript may be entered before appeal has been perfected.

———

*On presumption of negligence in case of automobile accident, see note in 38 **L. R. A.** (N. S.) 496.

On the question of negligence of operator of automobile under particular state of facts, see note in 1 **L. R. A.** (N. S.) 228.

On instruction of negligence of operator of automobile under particular state of facts, see note in 1 **L. R. A.** (N. S.) 234.

REPORTER.

**Appeal and Error—Order Extending Time to File Transcript—"From Day to Day."**

3. An order extending time for filing transcript "from day to day" is self-executing to extend the time from one day to another until the next term of the appellate court, and gives the court making it jurisdiction to make further order limiting the time for such filing.

**Courts—Record—"Journal Entry."**

4. A "journal entry" is the prescribed memorial of what the court actually did, and must speak the real truth; so that, if the court did not in fact make an order on a certain date, one cannot be supplied by any subsequent journal entry.

**Motions—Nunc Pro Tunc Order.**

5. The authority to make an order *nunc pro tunc* cannot be used to amend or change an order actually made.

**Appeal and Error—Transcript—Time to File—Extension—Nunc Pro Tunc Order.**

6. An order reciting that the court previously orally ordered that time for filing transcript on appeal be extended from day to day and ordering that appellant have an extension of ten days after the date when the court reporter should file a typewritten transcript of his stenographic notes of the testimony, operated not only as a *nunc pro tunc* order, but also as a new order further declaring the limits of time within which the transcript might be filed.

**Appeal and Error—Record—Time to File Transcript—Extension.**

7. Under Laws 1913, page 619, as to extension of time for filing transcript, providing that no such order shall extend it beyond the next term of the appellate court, the expiration of such term automatically ends the right of defendant to file his transcript, whether or not specified by order.

**Appeal and Error—Rights on Appeal—Liberal Construction.**

8. An appeal being a remedy, the laws and actions of courts in respect thereto should be liberally construed with a view to make the remedy effective.

### ON THE MERITS.

**Appeal and Error—Right of Appeal—Payment of Costs.**

9. The mere fact that costs on former appeal have not been paid does not entitle the defendant to dismissal of the appeal in the absence of showing that the costs cannot be collected.

**Evidence—Crossing Accidents—Admissibility.**

10. In action for death of traffic officer when struck by auto truck, it was not error to admit statement of witness as to what seemed to him to have been the circumstances where he used the expression as the equivalent of "as I saw it."

[As to admission of opinion evidence of witness as to whether a person's conduct was "careless," "negligent," or "reckless," see note in Ann. Cas. 1913C, 1077.]

84 Or.—15

**Appeal and Error—Scope of Review—Preservation of Exceptions.**

11. A party who fails to move to strike out an answer to a question has no cause for complaint that the testimony was admitted.

**Evidence—Crossing Accidents—Admissibility.**

12. While, as a general rule, a witness must testify to facts and not conclusions or opinions, yet, in action for death of traffic officer when struck by auto truck whose tires were of peculiar make and the tracks of which could not be reproduced, a witness could say that the tracks found fitted the tires of defendant's automobile.

**Evidence—Province of Jury—Disregarding Testimony.**

13. The jury need not accept as conclusive uncontradicted statements of any witness, and it may disregard undisputed testimony if unsatisfactory.

**Municipal Corporations — Crossing Accidents — Questions for Jury—Evidence.**

14. Evidence *held* to present a jury question whether driver of defendant's automobile truck was negligent in turning to the left before crossing an intersection, and in so doing killing the traffic officer stationed at such intersection.

**Municipal Corporations — Injuries to Persons — Instructions — Care Required.**

15. In action for death of traffic policeman when struck by auto truck, instruction precluding recovery if the policeman was negligent, and that the jury could consider that he had duties to perform, and could not look after himself as an ordinary pedestrian, is not objectionable as imposing less than the ordinary degree of care upon the officer, where the court further instructed the jury to consider all the circumstances.

**Trial—Instructions.**

16. Instruction that the jury is supreme in the realm of fact, and that the court is supreme in the realm of law, whether it correctly states it or not, is proper.

**Trial—Instructions—Repetition.**

17. Refusal of requested instructions which, in so far as they conform to the law, were covered by charges given, was not error.

**Costs—Dilatory Appeal—Damages.**

18. Where an appeal was taken in good faith and with probable cause, the respondent is not entitled to 10 per cent of the judgment as damages for delay.

From Multnomah: HENRY E. McGINN, Judge.

This is an action by Lulu R. White, administratrix of the estate of James R. White, deceased, against East Side Mill and Lumber Company, a corporation, to recover damages for an injury that caused the death

of plaintiff's husband.   From a judgment in favor of
plaintiff for $6,000, defendant appeals.   On respond-
ent's motion to affirm judgment.   Motion overruled.

(See, also, 81 Or. 107, 155 Pac. 364, 158 Pac. 173,
158 Pac. 527.)

In Banc.   Statement by MR. JUSTICE BURNETT.

In this case a judgment was rendered in the Circuit
Court in favor of the plaintiff on October 6, 1916.   On
the 21st of that month defendant served its notice of
appeal which was perfected on the 31st.   No transcript
having been filed in this court, the plaintiff moves for
an affirmance of the judgment on the ground that the
appeal has been abandoned.   Resisting this motion the
defendant shows that the Circuit Court made an order
on December 18, 1916, which, omitting the title of the
cause, here follows:

"The above entitled cause having come on regularly
to be heard upon motion of Hamilton Johnstone, Esq.,
one of the attorneys for the above named defendant;
and it appearing to the Court that heretofore, to-wit,
on October 21, 1916, the said Hamilton Johnstone, Esq.,
having appeared in open court before me in support
of a motion for extension of time within which to file
transcript on appeal in the Supreme Court, and within
which to file and settle bill of exceptions herein, the
said defendant appearing on said October 21, 1916, by
said Hamilton Johnstone, its attorney, and plaintiff
appearing by R. A. Sullivan, Esq., her attorney; and
it further appearing that the court on said October 21,
1916, did order that the defendant be allowed an exten-
sion of time from day to day in this cause within which
to file a transcript on appeal in the Supreme Court
and to file and settle bill of exceptions herein, but that
no written memorandum of said order was made on
October 21, 1916, and entered in the journal of this
court, and the court having at the time of said order
assured Hamilton Johnstone, Esq., attorney for said

defendant, that no advantage would be taken of him or said defendant because of any delay in procuring extension of the stenographic notes of the testimony taken at the trial of the above cause; and it further appearing that the reason for the failure of the defendant heretofore to file a transcript on appeal and to file and settle bill of exceptions is due to no fault of the defendant or its attorneys, but to the unavoidable pressure of business devolving upon the court reporter of this department; and the court being fully advised in the premises—

"IT IS HEREBY ORDERED that said defendant have and it is hereby granted an extension of time to a date ten (10) days from and after the date when the court reporter of this department shall file in this court a typewritten extension of the stenographic notes of the testimony taken at the trial of the above-entitled cause, within which to file a transcript on appeal in the Supreme Court, appealing from the judgment heretofore rendered in the circuit court of the state of Oregon, for the county of Multnomah, in this action, and within which to file and settle bill of exceptions herein.

"AND IT IS FURTHER ORDERED that this order be made and entered *nunc pro tunc* as of October 21, 1916, the date when this court made said order.

"Dated Portland, Oregon, December 18, 1916.

"(Signed)   HENRY E. McGINN, Judge."

MOTION OVERRULED.

*Mr. Raymond A. Sullivan,* for the motion.

*Messrs. Asher & Johnstone, contra.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In the act of February 28, 1913, it is laid down as a rule that:

"If the transcript or abstract is not filed with the clerk of the appellate court within the time provided,

the appeal shall be deemed abandoned, and the effect thereof terminated, but the trial court or the judge thereof, or the supreme court or a justice thereof, may, upon such terms as may be just, by order enlarge the time for filing the same; but such order shall be made within the time allowed to file transcript, and shall not extend it beyond the term of the appellate court next following the appeal."

Earlier in this enactment it is said:

"Upon the appeal being perfected the appellant shall, within thirty days thereafter, file with the clerk of the appellate court a transcript or such an abstract as the law or the rules of the appellate court may require, of so much of the record as may be necessary to intelligently present the question to be decided by the appellate tribunal, together with a copy of the judgment or decree appealed from, the notice of appeal and proof of service thereof, and of the undertaking on appeal. * * "

1. In the present juncture there is a wealth of affidavit on both sides declaring the versions of respective counsel of what occurred in the Circuit Court on October 21st. With these in that respect we are not concerned as they amount to mere bickerings between court and counsel. The order above quoted being the solemn act of a court imports absolute verity which we cannot question. Therefore, the matter must be determined by the proper construction to be given to that judicial utterance. It is contended that in fact the court made no order on the date last mentioned. But the certified exemplification before us declares in these words:

"That the court on said October 21, 1916, did order that the defendant be allowed an extension of time from day to day in this cause within which to file a transcript on appeal in the supreme court and to file and settle bill of exceptions herein."

It is argued that this is of no effect because made
before the commencement of the thirty-day period.
The statute, indeed, says that "such order shall be made
within the time allowed to file the transcript." This
language, however, has been construed in *Wolf* v. *City
Ry. Co.,* 50 Or. 64 (85 Pac. 620, 91 Pac. 460, 15 Ann.
Cas. 1181), and in *Vincent* v. *First Nat. Bank,* 76 Or.
579 (143 Pac. 1100, 149 Pac. 938). In the latter case
the court said:

"The contention made that this order can only be
made after the appeal has been perfected and before
the time to file the transcript has expired, we think not
sound. This construction is far too narrow. The con-
text shows that it was meant that the order should be
made before the time had expired to file the transcript,
and not to restrict it to the time after the appeal had
been perfected. We think this order was made within
the proper time."

2. Substantially the same language is used in the Wolf
Case. In that instance several orders were made each
before the expiration of the time specified in the one
next preceding, so that the time was extended on sev-
eral occasions and yet this court held that it had
jurisdiction.

3. Having shown that the order was actually made on
October 21st, allowing extension of time from day to
day we next consider the effect of that order. "From
day to day" means from one day to its succeeding day:
2 Words & Phrases (2 Series), 671. It must be held,
therefore, that the court's order operated to extend
the time from day number 1 to day number 2 and from
that to number 3, and thenceforward, and was limited
only by the provision that the time shall not be ex-
tended beyond the next term of the appellate court.
The order was self-executing so as to carry the time

on day by day with the restriction noted. The court did not say that the time should be extended from October 21st to October 22d, in which event it would have been necessary to make a second order on the latter date and so following. But a fair construction of the judicial direction would be that without further order the time would go on day after day until it reached the legal limit noted. The effect of this is to retain within the bosom of the Circuit Court jurisdiction to make further order respecting the matter under consideration, provided it was made before the statutory lapse of the extension already granted.

We come then to the force of what was done December 18th. It is urged against the order quoted that it does not enter of record *nunc pro tunc* the same order that the court says it made on October 21st. More concretely explained the contention is that whereas the court should have again declared that "the time is extended from day to day" without saying more, it entered a different direction, viz., that the defendant have an extension of time to a date ten days from and after the date when the court reporter shall file extension of his stenographic notes of the testimony.

4–8. A journal entry is the prescribed memorial of what the court actually did. It must speak the real truth. If the court did not in fact make an order on the earlier date, one cannot be supplied by any subsequent journal entry. Moreover, the authority to make an order *nunc pro tunc* cannot be used to amend or change the order actually made. Here, however, we have spread upon the journal on December 18th, the statement that:

On October 21st the court "did order that the defendant be allowed an extension of time from day to day in this cause within which to file a transcript on appeal

in the supreme court and to file and settle bill of exceptions herein.''

By this recital written upon the journal by authority we are officially informed that the court made the order quoted. In precise words we have a memorial of what the court actually did on October 21st, and it is sufficient as a *nunc pro tunc* order to show that on December 18th jurisdiction to make further order respecting the time was within the breast of the Circuit Court. Thus empowered, the trial judge had a right to make a new order as was done in the Wolf Case differently declaring the time within which the transcript might be filed. Consequently he was within the sanction of the law when he said:

''It is hereby ordered that the said defendant have and it is hereby granted an extension of time to a date ten days from and after the date that the court reporter of this department shall file in this court a typewritten extension of the stenographic notes of the testimony taken at the trial of the above entitled cause within which to file a transcript on appeal in the supreme court.''

The quoted extract from the journal of the court operates not only as a *nunc pro tunc* order, but likewise as a new order further declaring the limits of time within which the transcript may be filed. Of course all this is subject to the limitation established by the statute to the effect that the time shall not be extended beyond the succeeding term of the appellate court. Without anything further being said, the expiration of that term will automatically end the right of the defendant to file its transcript. An appeal is a remedy and the laws and actions of courts in respect thereto should be liberally construed with a view to make the remedy effective. The Circuit Court evi-

dently intended to grant an extension of time. We cannot presume that the judge arbitrarily held out allurements to the defendant as to a Tantalus, that its right to appeal should be protected, yet at the same time intending to let the privilege lapse by limitation.

We conclude, then, that as a matter of fact the court on October 21st made an order extending the time "from day to day"; that this operated without further direction of the court to continue the matter subject to the restriction prescribed by law relating to the next term of the appellate court; that the effect was to retain in the bosom of the Circuit Court the right to make further orders relating to the extension of time; that the journal entry of December 18th operates not only as an official statement of what was indeed transacted on October 21st, but also as a further order controlling the matter to the present time. The motion to affirm the judgment is overruled and the application of the defendant to cure the diminution of record is allowed.                          MOTION OVERRULED.

Affirmed May 1, 1917.

ON THE MERITS.

(164 Pac. 736.)

In Banc.   Statement by MR. JUSTICE BEAN.

This is an action by plaintiff, Lulu R. White, as administratrix of the estate of James R. White, her deceased husband, to recover damages for a personal injury to him whereby he lost his life. The cause was tried before the court and a jury resulting in a verdict and judgment for $6,000 in favor of the plaintiff. Defendant appeals.

The gist of the complaint is that on November 17, 1914, the decedent was a traffic officer in the City of Portland, stationed in the middle of the intersection of East Burnside Street and Union Avenue; that an auto truck of defendant driven by one Mergens was carelessly and negligently driven against him causing his death; that it was the duty of the driver of said truck to proceed at a reasonable speed and that he drove at a rate greater than was safe and proper; that in driving the truck from Union Avenue east on Burnside Street, it was his duty while the auto was being so turned to the left, to run to and beyond the center of the intersection of such streets, at which point James R. White, the deceased, was then standing and directing traffic as a police officer; that defendant's servant did not drive the truck to and beyond the center of the intersection of said streets but operated it directly over and across the center of the intersection thereof over the point where James R. White was then standing, and ran into and struck him, knocking him with great force to the pavement and causing the injuries which resulted in his death. It is further alleged that the seat of the auto truck was negligently inclosed at the rear and on both sides with a hood, which prevented the driver from looking to the rear and sides and ascertaining the condition of the traffic. The defendant answered admitting that the decedent was killed by a collision with the truck driven by its servant, but denied all the allegations of negligence on its part, and alleged contributory negligence upon the part of the traffic officer in turning his back to the auto and stepping backwards in front of the automobile as it passed him, thereby causing the accident. The reply put in issue the new matter of the answer in

so far as it was in conflict with the allegations of the complaint.

Section 10 of the traffic ordinance of the City of Portland, which is pleaded, requires that all vehicles approaching a street intersection with the intention of turning shall, in turning to the left run to and beyond the center of the intersection of such streets.

Section 18 enacts that "the rate of speed of all vehicles within the congested district shall not exceed fifteen miles per hour and shall at no time be greater than is reasonable and proper, having regard to the safety of the public, the traffic or use of the streets or highways then being traveled."

The intersection of Union Avenue and East Burnside Street is within the congested district of the city of Portland. There is a double track street railway on East Burnside Street and on Union Avenue leading from the north, diverging east and west on the former street. The auto truck mentioned was a four-ton truck with a 50 per cent overload. The wheel base was 16 feet, the total length being about 25 feet.

                                        AFFIRMED.

For appellant there was a brief over the name of *Messrs. Asher & Johnstone,* with an oral argument by *Mr. Hamilton Johnstone.*

For respondent there was a brief and an oral argument by *Mr. Raymond A. Sullivan.*

MR. JUSTICE BEAN delivered the opinion of the court.

9. Counsel for defendant moved the court to strike the case from the trial docket for the reason that the costs upon the former appeal (see 81 Or. 107, 155 Pac. 364, 158 Pac. 173, 158 Pac. 527), and those upon the trial in

the Circuit Court had not been paid. This was refused and the ruling constitutes the first assignment of error. This court denied a similar motion in 1894 in the case of *Osmun* v. *Winters,* 25 Or. 260, 274 (35 Pac. 250). There the ruling was in consonance with Article I, Section 10 of the Constitution which provides that:

"Justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property or reputation."

This is not a second or a vexatious action. Defendant contends that if plaintiff had shown that she was too poor to pay the costs, the trial of the cause might properly have proceeded. On the other hand, there is no showing that the costs cannot be collected from the estate or that defendant will be injured. There was no error in denying the motion.

10. The third, fourth and fifth assignments of error involve the reception of certain evidence over defendant's objection and exception. Harry Root, a witness for plaintiff, in describing the approach of the truck, testified as follows in part:

"Q. What did the truck do then?

"A. It came down—well, it came down about here [indicating], in here, some place, and gave a very sharp turn, bringing the fore wheels just almost inside this track here [indicating], and, and, then the rear wheels, it being such a long truck, came over and struck the officer. There was a pipe in front of the front wheels that seemed to control the feed, an oil pipe that seemed to feed the chain—

"Q. [Interrupting.] The front truck?

"A. I mean, the rear wheel. There seemed to be an oil pipe sticking out there that caught the officer and threw him. * *

"Q. Tell, Mr. Root, just what you saw there.

"A. Well, the truck turned down there, and naturally the rear wheels came between him and I, but the part that seemed to strike him was that pipe."

Objection was made that the witness "should state just what he saw, not his conclusion of what 'seemed' to be there." After some argument and the third objection, the trial court explained that "I take it that the witness uses the term 'seems' when his judgment of the thing is that he saw it." We think the language of the witness was to the same effect as though he had said "it appeared to me" or "as I saw it," and that the evidence was not an expression of an opinion or conclusion, and that the ruling was correct. We fail to see that it was very material whether the part of the machine in front of the rear wheel, was a guardrail, oil pipe, or a part of the chain attachments. The evidence indicated that the decedent was struck by the part of the truck in front of the rear wheel.

11. Sam Goldeen, who was sitting in a machine about 50 feet away on Burnside Street and saw the accident happen, testified for plaintiff to the effect that there was a traffic officer standing right in the center of the street; and that on Union Avenue north of East Burnside Street there was a truck standing up even with the property line, and quite a ways out from the west curb far enough to have one wheel on the street-car track.

To the question, "What did you see happen there, Mr. Goldeen?" he answered:

"Well, the traffic officer motioned for him to come ahead and he came right straight down here. I thought he was going to our right straight ahead, the way I was looking at him, on account of the way he turned this corner. He went down there cramping his

wheels and he shot right straight up this track. You could see that he didn't go right straight up that track [indicating] there—''

The witness further testified in substance that before the machine started the officer was facing north and then turned around facing south; that the truck came down with its front wheels a little beyond the center of the intersection; that the driver then turned east with his wheels on the track, the back ones over the track and the front ones just about straddling each rail; that in making the turn the truck did not run to and beyond the center of the intersection of those streets; that he judged the left rear hind wheel of the truck went about 2 or 3 feet north of the intersection; and that as the truck attempted to make the turn the officer was struck and run over. While, as we understand, the witness' first statement in regard to the officer being struck was his way of expressing what he saw, yet the ruling of the court was favorable to the defendant and the witness changed his answer to the emphatic statement that "the officer was struck and run over." Further, there was no objection to the question and while a request was made for counsel for plaintiff to consent to the striking out of the answer objected to no direct motion was made to that effect for the court to rule upon, which was the proper remedy. For these three reasons defendant has no cause for complaint. The authorities cited do not apply.

Henry W. Norene, a police officer and a witness for plaintiff, testified that after the accident happened he followed the truck about three blocks and brought it back to the street crossing, and about thirty or forty minutes after the injury he examined the tracks at the intersection of the streets mentioned.

To the question, ''What kind of marks did you see on the pavement of this street intersection, Mr. Norene?'' he replied:

''Why, there were blotches in the dust that would be made by tires of that kind of wheels.''

To the further interrogatory, ''What did you discover in regard to any marks upon that street intersection?'' he answered:

''I traced the tracks that the rear wheels had taken, especially the left rear wheel.''

Upon motion of defendant's counsel plaintiff's attorney consented that the part of the answer as to what wheels made the tracks be stricken out as a conclusion.

In answer to the question, ''What kind of marks did you see on the pavement of this street intersection, Mr. Norene?'' he said:

''Why, there was blotches in the dust that would be made by tires of that kind of wheel.''

Upon a motion of counsel for defendant to strike out the latter part of the answer the court held that the evidence came within the ruling in *Commonwealth* v. *Sturtivant,* 117 Mass. 122, that as the marks were effaced and could not be reproduced or described to the jury precisely as they appeared to the witness who examined them at the time, he might give his conclusion for the consideration of the jury. Counsel for defendant saved an exception to this ruling.

12. As a general rule a witness must testify to facts and not to conclusions or opinions in order that the jury may draw inferences from the evidence and conclusions from the facts presented. There are exceptions to this rule founded upon necessity, for the reason that the facts cannot be reproduced or depicted to the jury

precisely as they appeared to the witness, and from the nature of the subject it is impractical for him to relate what he may have seen without supplementing his description with his conclusion. Under such circumstances a common observer, although not an expert, may testify to his opinion or conclusion regarding what he has seen: *First Nat. Bank* v. *Fire Assn.,* 33 Or. 172 (53 Pac. 8); *State* v. *Barrett,* 33 Or. 194 (54 Pac. 807); *Everart* v. *Fischer,* 75 Or. 316, 328 (147 Pac. 189). An exception to the general expert evidence rule is the admissibility of testimony in regard to the identity and appearance of persons and things, respecting which facts, when personally observed by any one of maturity and ordinary intelligence, he may express an opinion: *Weiss* v. *Kohlhagen,* 58 Or. 144 (113 Pac. 46); *Kitchin* v. *Oregon Nursery Co.,* 65 Or. 20, 25 (130 Pac. 408, 1133, 132 Pac. 956); *Kelly* v. *Weaver,* 77 Or. 267, 271 (150 Pac. 166). The evidence objected to comes within the exception to the general rule. It would have been practically impossible for the witness, whether lawyer or layman, to describe the auto truck tire which appears from the photo to be a kind of double nonskid type, and the marks in the dust, both of which he had seen, so that the jury could determine whether the tracks were made by the truck. The evidence was not vital. Other eye-witnesses to the casualty delineated the course taken by the auto truck at the time. There was no error in denying the motion to strike out the evidence.

13, 14. At the close of plaintiff's evidence in chief, counsel for defendant moved the court for a nonsuit and at the proper time requested the court to direct a verdict in favor of defendant. These requests may be considered together. The question involved is the crux of this case. In addition to the evidence above referred to

the testimony tended to show that at the time of the accident complained of, in making the turn to the left· at the intersection of Union Avenue and East Burnside Street the defendant's driver did not run to and beyond the intersection of the streets named before turning, according to the direction of the city ordinance, but negligently ran the truck at a high rate of speed so that the front part of the same was slightly past the street center, and then turned and ran to the left causing the truck to run over the center of the street intersection where plaintiff's intestate was stationed in the performance of his duty as a traffic officer; and that the part of the truck in front of the left rear wheel struck White, knocked him down and the wheel ran over and killed him. Counsel for defendant do not question that the evidence on the part of the plaintiff tends to show such facts, but submits that "uncontradicted and unimpeached testimony shows it was a physical impossibility for the left rear wheel of the auto truck to take the courses marked on the maps by Root and Goldeen." The material point is that the defendant's servant drove the truck against the decedent in the center of the intersection of the streets where he was in the performance of his duty in violation of the ordinance of the city, which suggestion is a sufficient answer to this argument. What route the truck took, where it started from to get to the center of the street, whether the witnesses for plaintiff marked the course of the left rear wheel on the map correctly, or whether Clark, defendant's expert, was correct, are matters of secondary consideration. It was for the jury to settle the minor discrepancies in the evidence and determine what was the actual truth as to the main facts. A jury is not bound to accept as conclusive the uncontradicted statements of

84 Or.—16

any witness; they may disregard undisputed testimony if it is unsatisfactory to them: *Taffe* v. *Oregon Ry. & Nav. Co.*, 60 Or. 177 (117 Pac. 989); *Graham* v. *Coos Bay R. & N. Co.*, 71 Or. 393 (139 Pac. 337). We have no duty pertaining to the weight of the testimony. Suffice it to say that the evidence tends directly to show that the auto truck was not run to and beyond the center of the intersection of the streets before turning, and to sustain the allegations of the complaint. Whether the witnesses were exactly correct in all the details would not prevent the jury from segregating the evidence and finding where the preponderance was: *Sullivan* v. *Wakefield,* 59 Or. 401 (117 Pac. 311); *Jones* v. *National Laundry Co.,* 66 Or. 218 (133 Pac. 1178); *Dickerson* v. *Eastern & W. Lumber Co.,* 79 Or. 281 (155 Pac. 175); *Johnson* v. *Portland Ry. L. & P. Co.,* 79 Or. 403, 408 (155 Pac. 375); *Childers* v. *Brown,* 81 Or. 1 (158 Pac. 166). The evidence on this and other points was amply sufficient to be submitted to the jury. There was no error in denying the defendant's motion for a nonsuit nor in refusing the request for a directed verdict for the defendant.

15. Defendant complains of the charge given to the jury. The court in effect told the jury that for the plaintiff to recover, the death of White must have been caused by the sole negligence of the defendant, which sole negligence must have been the proximate cause of his death; that to constitute negligence there must be a want of reasonable care which a person of ordinary prudence would have used under the existing circumstances; that if they found that White himself was negligent and that his negligence contributed in any way to bring about his death, that is, if the combined negligence of both him and the defendant brought about his death there could be no recovery. The court

also instructed the jury in substance that a man must
exercise his senses of hearing and seeing and every-
thing of that kind for his personal safety and protec-
tion; but that it should take into account that "that
man, as a traffic officer had duties to perform there,
other than looking after his own personal safety," and
that he "had the right to expect that those traveling
those streets would take into consideration the fact
that he had duties to perform there, and that he could
not look after himself as would one who had nothing
to do but walk around those streets." Defendant ob-
jects and excepts to the portion of the charge quoted,
particularly as to the degree of care required of plain-
tiff's husband. Upon this phase of the case defend-
ant requested the court to instruct the jury as follows:

"Negligence is defined to be the want of ordinary
care; that is, such care as an ordinarily prudent per-
son would exercise under like circumstances, and it
should be proportioned to the danger and peril rea-
sonably to be apprehended from a lack of the proper
prudence. A person must use his faculties in propor-
tion to the danger of his employment, and must use
every reasonable precaution to provide for his safety
and such as an ordinarily prudent man under the same
circumstances would do."

We compare the charge given with the request of
the defendant and are unable to distinguish any mate-
rial difference in regard to the part complained of.
The language used by the court was more closely ap-
plied to the case. In plain terms the court instructed
the jury to take into consideration the surrounding cir-
cumstances of the place. Ordinary care would suggest
more vigilance by the same person upon a crowded
thoroughfare than in a secluded spot. We should not
confound the alertness which ordinary care and pru-
dence would demand of a reasonably careful person

in a place of danger, with the care itself. Great danger requires great vigilance: *Savoy* v. *McLeod,* 111 Me. 234. We do not agree with the suggestion of the learned counsel, if such was intended, that the instruction given required less than ordinary care on the part of the traffic officer. The charge indicated that it was the duty of the officer to use ordinary care for his own protection, the degree of which is commensurate with the danger to be avoided: *Carroll* v. *Grande Ronde E. Co.,* 47 Or. 424 (84 Pac. 389, 6 L. R. A. (N. S.) 290); 11 Thompson, Neg., § 1463; 1 Shearman & Red., Neg. (6 ed.), § 87; *Graves* v. *Portland Ry. L. & P. Co.,* 66 Or. 232–234 (134 Pac. 1, Ann. Cas. 1915B, 500).

The charge enjoined no less a degree of care on the part of the officer than it did upon the defendant's driver of the auto truck. The chauffeur should have been watchful and should have known that in making a turn the rear wheels of a vehicle do not follow exactly in the course as the front ones. As the jury must have found, there was plenty of room to turn the machine at the street intersection without running over the center and striking the officer while he was at his place of duty. Indeed, it is difficult to see how the jury could have found otherwise from the evidence. The facts in the case at bar differ widely from those in the cases of *Clark* v. *Boston & Albany R. R. Co.,* 128 Mass. 1, and *Loettker* v. *Chicago City Ry. Co.,* 150 Ill. App. 69, cited by the defendant. From the two decisions cited the only variance in law which we can discern, as given the jury by the trial court, is a mere matter of phraseology. The instruction to the jury was in plain language and fairly submitted the question to them. The duty of the traffic officer required him to be at the center of the intersection where the evidence tended to show, and the jury found, that he

was. In the ordinary course of affairs he would not expect that a vehicle would be run over the center of the intersection contrary to the law, and he could not be expected to be looking in both directions at the same time.

16. It is asserted by defendant that the court erred in charging the jury as follows:

"You are supreme in the realm of fact. Just as supreme as you are in the realm of fact, just so supreme is the court in the realm of law. He may not correctly have stated the law which is to govern you, and he may be far afield. Be that as it may, there is a tribunal appointed by law to correct him if he is in error. You are not that tribunal."

17. This was in effect the usual and proper direction and caution to the jury. The requested instructions in so far as they conform to the law were covered by the court's charge and there was no error in refusing those not given: *State* v. *Branson,* 82 Or. 377 (161 Pac. 689); *Pilson* v. *Tip-Top Auto Co.,* 67 Or. 537 (136 Pac. 642); *Powder Valley State Bank* v. *Hudelson,* 74 Or. 191 (144 Pac. 494).

18. We have examined other assignments of error which we do not deem require further discussion. Application is made by plaintiff for damages to the amount of 10 per cent of the judgment for the delay caused by this appeal. We cannot say the appeal was not taken in good faith. There was probable cause therefor, and the application is denied.

Finding no error in the record the judgment of the lower court is affirmed.                    AFFIRMED.