Argued May 8, reversed and remanded September 18, petition for
rehearing denied November 5, 1963

# FOSTER ET UX v. AGRI-CHEM, INC.

385 P. 2d 184

*Robert W. Collins,* Pendleton, argued the cause for appellants. On the briefs were Fabre & Collins and John W. Smallmon, Pendleton.

*George H. Corey,* Pendleton, argued the cause for respondent. On the brief were Corey & Byler and Lawrence B. Rew, Pendleton.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

The primary problems in this case involve the admissibility of evidence of out-of-the-courtroom experiments and whether there was any evidence of a waiver of a claim for damages.

The defendant contracted to sell and apply liquid nitrogen fertilizer on the plaintiffs' wheatlands. The defendant agreed to apply not more than 50 pounds of fertilizer per acre. Plaintiffs contend that 64 pounds per acre were applied and the application was performed in an unhusbandlike manner. They allege that because of this negligence the land yielded 10,550

bushels of wheat less than it would have yielded had the fertilizing been performed according to the contract.

The defendant denied excessive or improper application; alleged plaintiffs were contributorily negligent in improperly applying the fertilizer; and contended plaintiffs waived any claim for damages by paying for the entire amount of fertilizer. The jury returned a verdict for the defendant.

A crucial question was whether or not the application of 64 pounds of fertilizer per acre caused the yield to decrease 10,550 bushels or in any substantial amount. The claimed loss was approximately 11 bushels of wheat per acre. Plaintiffs' evidence was that in the crop year involved, 1959, their wheatland produced an average of 46 bushels per acre. (The crop year of 1959 means the crop is harvested in the summer of 1959, but seeded and fertilized in the fall of 1958.) To prove that the application of 64 pounds of fertilizer adversely affected their yield, the plaintiffs introduced evidence of the amount of fertilizer used by their neighbors and the crop yield of their neighbors. The evidence was that plaintiffs' neighbors used a maximum of 45 pounds per acre and had yields of no less than 58 bushels per acre.

To counteract this testimony defendant offered the testimony of two experts, Mr. Oveson, superintendent of the Pendleton Branch, Oregon Agricultural Experiment Station, and Mr. Gassett, supervisor of the research laboratory of Pendleton Grain Growers, a large farmers cooperative. Both of these witnesses testified that in the course of their work they had conducted various tests to determine the effect of nitrogen fertilizer upon wheat. They testified these tests indicated that the application of 60, 90, and 120 pounds of liquid

nitrogen fertilizer had not substantially reduced the yield of wheat. Evidence of specific test results was admitted. Plaintiffs objected to the introduction of these test results upon the ground that the results of experiments cannot be introduced without evidence that they were made under conditions substantially similar to those present in the matter in dispute.

■■ As a general proposition an experiment is admissible only if the experiment is performed under conditions substantially similar to those existing in the case being tried. See *Western Feed Co. v. Heidloff,* 230 Or 324, 347, 370 P2d 612 (1962). It is also a general principle that the trial court has wide discretion in the admission of the results of experiments. *Loibl v. Niemi,* 214 Or 172, 181, 327 P2d 786 (1958).

There was testimony that the type of soil and the amount and time of rainfall on the test plots were the same as those on the Foster ranch. The time when seeding was done is unknown as to either plaintiffs' land or the test crops. Mr. Oveson, one of the testers, stated this was immaterial. He also stated it was immaterial whether or not the land had been fallow or had a previous crop of peas or grain.

■ The tests conducted by these two witnesses are not the usual kind of "experiments" as that term is used in decisions on the admissibility of evidence. The usual "experiment" consists of the arranging of conditions approximating those attendant upon the fact in issue and observing the data emanating from such arranged conditions. The sole purpose of such an "experiment" is to obtain information for use in a particular lawsuit. The tests here had no relation to any lawsuit and were for the sole purpose of obtaining scientific knowledge. No decisions have been found pointing up this distinction. However, because this

type of evidence is free from the taint of interest or bias that might accompany the usual "experiment" evidence, we believe greater latitude should be shown in admitting such evidence.[1]

■ Therefore, for these two reasons, that it is within the discretion of the trial court to admit the usual "experiment" if as much similarity of conditions is shown as was here, and that these were not "experiments for trial," the trial court's admission of the evidence is approved.

■ Plaintiffs' next assignments of error concern defendant's affirmative defense of contributory negligence. There was evidence that plaintiffs' employees pulling the applicator, when fertilizing the corners of the fields, applied fertilizer to ground already fertilized. This would result in overfertilization of certain areas. The trial court's rulings were not erroneous.

Defendant affirmatively alleged in its answer that plaintiffs paid the defendant for all the fertilizer used and this constituted a waiver of any claim plaintiffs might have had. After defendant rested, plaintiffs moved to strike this defense upon the ground that there was no evidence to support it. The motion was denied.

After summarizing defendant's allegation of waiver, the trial court instructed the jury as follows:

> "In this connection, a total payment made for services received under a contract, where the party making payment has knowledge of a defect in the performance or service received, constitutes a

---

[1] The same kind of evidence may have been visualized in the statement at 361, § 169, McCormick, Evidence (1954): "It seems also that experiments designed to show the general traits and capacities of materials involved in the controversy might often reasonably be admitted in evidence without confining such experiments to the conditions surrounding the litigated situation."

waiver of the right to make a claim for damages for the defective performance for services, unless there are other circumstances mitigating against such a waiver."

The plaintiffs excepted to the giving of this instruction upon the ground that there was no evidence of waiver and the instruction "does not require that [sic] the jury to find that it was the intention to waive this obligation before they would be able to consider this question."

■ After the fertilizer had been applied and the bill for the fertilizer had been sent to plaintiffs, Mr. Foster wrote Agri-Chem, stating that there had been overfertilization and that if this caused any damage he would expect reimbursement therefor. Mrs. Foster testified that thereafter when defendant's manager asked about payment of the bill, it was paid. At or before the time of payment she testified the manager said, "if there was anything wrong that the differential would be taken care of, and that if there was any damage that would be taken care of; he would stand behind his product and his company." None of this testimony was denied by defendant's manager when he was on the stand.

When uncontradicted testimony must be accepted by the jury as establishing the fact is outlined in *Wiebe v. Seely, Administrator*, 215 Or 331, 343-344, 335 P2d 379 (1959), quoting from *Ferdinand v. Agricultural Ins. Co.*, 22 NJ 482, 126 A2d 323, 62 ALR2d 1179 (1956). The principle is stated as follows:

" '* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. * * * [Citing cases]. But

when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury. * * *' "

Measured by this criteria the uncontradicted testimony of Mrs. Foster is conclusive of the facts involved in this issue.

The facts that the jury must have accepted on this issue are that plaintiffs gave notice of a claimed breach of contract and that they would expect reimbursement if they suffered any damage because of this breach. The jury would further have to find that at the time of payment or immediately prior thereto the defendant stated it would pay any damages. Upon these facts it is held that the trial court erred in submitting the question of waiver to the jury.

The term "waiver" has been used to cover several classes of legal problems. Both Williston and Corbin term the problem one of "discharge" rather than "waiver." 5 Williston, Contracts (3d ed), 437, § 724; 5 Corbin, Contracts, 984, § 1245. The rule is stated in Corbin, supra, as follows: "* * * a claim for damages for a breach can be discharged by a mere voluntary statement * * *." As this statement indicates, consideration is not necessary to support such a discharge. However, "The mere receipt of the defective performance is not in itself sufficient to discharge the claim to damages for the breach. There must be an expression of assent to accept it in satis-

faction and as a complete discharge. \* \* \* he must express his assent to accept it as a complete discharge of the obligor's duty to him." (at 984-985)

*McDonald v. Supple,* 96 Or 486, 497, 190 P 315, involves the same general principle although in a different context. In that action Wakefield contracted to do certain work for the defendant for an agreed price. Wakefield brought an action for additional compensation, alleging that the defendant had caused Wakefield to do additional work in order to fulfill his contract. Pursuant to the terms of the contract, during the course of the work, Wakefield submitted progress statements and had been paid in accordance therewith. Defendant contended that Wakefield's acceptance of such payments barred him from claiming additional compensation. The court denied this contention, stating:

"\* \* \* It was not contemplated that such advance payments should be a final settlement of any part of the work, and the contention of defendant that plaintiff is thereby estopped from claiming additional compensation cannot be maintained. The evidence tended to show that, in different conversations between Wakefield and Supple, the latter told Wakefield in effect to go ahead and do the work, and Supple would make it all right with him when he got through. \* \* \*" (at 497)

The contract here between the parties involved more than a sale of goods. However, the law of sales should be very persuasive. The Uniform Sales Act (ORS 75.490) provides:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages \* \* \*."

*Durbin v. Denham,* 106 Or 34, 39, 210 P 165, 29 ALR 1227, was an action upon a promissory note given in payment for a tractor. The answer alleged a breach of warranty and the plaintiff urged that such a claim was waived by reason of payment by execution of the note. The court quoted 35 Cyc 433, 434, with approval as follows:

> "\* \* \* payment, part payment, or the giving of notes for the purchase price, is not a waiver of a breach of warranty unless an intent to waive such breach is proven, \* \* \*." (at 40)

The evidence here is conclusive that the plaintiffs by payment, did not intend to waive any claim they may have had against defendant. The trial court's failure to remove this defense from the jury's consideration was error and the case must, therefore, be reversed and remanded to the trial court for a new trial.