Argued October 3, 1977, reversed and remanded March 7, 1978

ROGERS, *Respondent, Cross-Appellant,*

*v.*

HILL, *Appellant.*

(TC 419 650, SC 25019)

576 P2d 328

[ 491 ]

[ 492 ]

Edward H. Warren of Hershiser, Mitchell & Warren, Portland, argued the cause and filed a brief for appellant.

Deane Sterndale Bennett, Portland, argued the cause for respondent, cross-appellant. Michael E. Clift, Portland, filed the brief.

LINDE, J.

Bryson, J., joins in the result.

Tongue, J., specially concurring opinion, joined by Lent, J.

Howell, J., dissenting in part, joined by Holman, J.

## LINDE, J.

Defendant Hill, a deputy sheriff in Multnomah County, appeals from a judgment for damages awarded plaintiff Rogers on causes of action for assault and battery and malicious prosecution. The litigation arose from an altercation in the parking lot of the apartments where Rogers resided, when he intervened in an argument between Officer Hill and one Curtis. In the course of events Rogers was allegedly struck by Hill, thereafter arrested, and eventually prosecuted for resisting arrest and acquitted. Rogers subsequently brought the present action against Hill and another deputy sheriff, Stewart, who had transmitted Hill's written report to the district attorney for prosecution. Plaintiff took a voluntary nonsuit against Stewart. In his action against Hill, the jury returned verdicts for plaintiff on his claims of assault and battery and malicious prosecution and against him on a claim of false arrest.

With respect to the first cause of action, for assault and battery, defendant assigns as error the trial court's instruction to the jury that "the only evidence in this case is that the defendant did strike the plaintiff," and that this striking was a battery for which defendant would be liable unless the jury found that it was privileged.[1] The evidence to which the trial court referred was the testimony of plaintiff and his wife. It was not contradicted by defendant, who chose not to testify in his own behalf. However, defendant contends that the occurrence of the battery itself was a jury issue because the jury was entitled to disbelieve even the uncontradicted testimony of plaintiff and his wife, especially since they were interested parties.

The question whether and when a jury may be directed to give conclusive effect to the uncontradicted

---

[1] Now, I instruct you that the only evidence in this case is that the defendant did strike the plaintiff and that striking would constitute a battery or, I should say, does constitute a battery, for which the defendant would be liable in damage unless you find that the defendant was privileged to cause the contact.

[ 493 ]

testimony of a proponent of a fact in issue was reviewed by this court in *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962). The court concluded that it is equally incorrect to state as a general rule that uncontradicted testimony must be taken to prove the fact in issue or, at the other extreme, that the credibility of such testimony is invariably an issue for the jury. Instead, *Rickard* held that "whether uncontradicted testimony is such as to preclude the jury's function in testing the credibility of the witness or witnesses who gave it will depend upon the nature of the issue in the particular case which the testimony purports to resolve." 230 Or at 52. In reaching this conclusion, Justice O'Connell's opinion quoted from the opinion of Chief Justice Vanderbilt in *Ferdinand v. Agricultural Insurance Co.,* 22 NJ 482, 126 A2d 323, 62 ALR2d 1179 (1956), which had previously been followed in *Wiebe v. Seely, Administrator,* 215 Or 331, 343-344, 335 P2d 379 (1959):

> ". . . Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury . . . . [Citing cases]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an [ordinarily] intelligent mind, then a question has been presented for the court to decide and not the jury. . . . [Citing cases]." *Rickard v. Ellis, supra,* 230 Or at 51.

Credibility, the *Ferdinand* opinion continued, "is but one of the elements upon which the mind must work in the determination of the final result," and not inherently beyond determination by the judge when it is not put in doubt. Thus,

> where the uncontradicted testimony of a witness, interested or otherwise, is unaffected by any conflicting inferences to be drawn from it and is not improbable,

extraordinary or surprising in its nature, or there is no other ground for hesitating to accept it as the truth, there is no reason for denying the verdict dictated by such evidence . . . . [Citing cases]. 22 NJ at 498, 126 A2d at 332.[2]

*See also Foster v. Agri-Chem, Inc.,* 235 Or 570, 385 P2d 184 (1963); *Palmer v. Van Petten Lbr. Co.,* 265 Or 347, 509 P2d 420 (1972); *Wattenburg v. United Medical Lab.,* 269 Or 377, 525 P2d 113 (1974).

Although the mere statement that the effect of uncontradicted testimony "will depend upon the nature of the issue in the particular case which the testimony purports to resolve" gives little precise guidance to trial courts or counsel, *Rickard* itself continued by emphasizing two factors among many that bear on the question: the availability of evidence to contradict the offered testimony and the likelihood that the witness's interest in the litigation might tempt him to testify falsely.[3] They were reiterated in *Schmitz v. Yant,* 242 Or 308, 317-318, 409 P2d 346 (1965), concerning damages for loss of consortium, which the court considered to involve relations "of so intimate a character" that the credibility of plaintiff's testimony or that of his or her spouse would almost always be a jury question. Of course, not only self-interest but also the difficulty of obtaining contrary evidence indicated that result. *See Streight v. Conroy,* 279 Or 289, 566 P2d 1198 (1977), another claim of loss of consortium.

---

[2] Chief Justice Vanderbilt's opinion in turn relied extensively on *Jerke v. Delmont State Bank,* 54 SD 446, 223 NW 585, 72 ALR 7 (1929), and 9 Wigmore on Evidence § 2495, at 305-306 (3d ed 1940).

[3] Other distinguishing factors mentioned in discussions of this question include whether there are internal gaps or inconsistencies in the testimony, whether the issue concerns events directly testified to or inferences from those events, whether the events described are unusual or improbable, and whether the testimony involves expert opinion. *See* Bobbe, *The Uncontradicted Testimony of an Interested Witness,* 20 Cornell L Q 33 (1934); Brizius, *Directed Verdicts on Uncontradicted Testimony,* 1959 Trial Law. Guide 65; Note, *The Power of the Court To Determine Witness Credibility: A Problem in Directing a Verdict for the Proponent of the Evidence,* 107 U Pa L Rev 217 (1958); Annot., 62 ALR2d 1191 (1958).

The same factors are pertinent in this case. Whether they were correctly applied is a close question. Necessarily their application in a trial setting involves the exercise of judgment by the trial court, but it is not a matter of discretion. The fact at issue was whether defendant Hill's hand struck plaintiff Rogers's face. Plaintiff's testimony was that he grabbed Curtis by the arms to keep him from "trying to get back at the officer." He continued:

> The officer approached Dender Curtis and myself and he took a swing at Dender Curtis while I was hanging onto him. And Dender Curtis ducked down and I got a graze on the face and that's when I let go.

His testimony continued with additional details. Debra Rogers, plaintiff's wife, testified that she saw defendant swing at Dender Curtis while Rogers was holding Curtis's arms: "Then Denny ducked and [Hill's] fist hit Bob." Defendant's counsel did not question this part of her testimony on cross-examination. Moreover, he did not call defendant himself as a witness to contradict the Rogerses' testimony, though the contradiction of the alleged striking, if it did not occur, was not only readily but uniquely available to the defendant.[4]

■■ Nevertheless, we think the jury in this case might have disbelieved plaintiff's version of the striking if they had been given the opportunity. The acts in issue occurred in a setting of emotional tension after which each participant might recall events in a manner consistent with his or her recollected role. There were differences between officer Hill's written report and the testimony of Mr. and Mrs. Rogers on other aspects of the episode. It follows that the instruction stated in note 1, above, was error.[4a]

---

[4] Plaintiff called defendant as an adverse witness but limited his questioning to matters bearing on the causes of action for false arrest and malicious prosecution. In consequence, defendant's cross-examination by his own counsel was similarly limited.

[4a] A dissenting opinion states that we should not decide this issue because defendant took no exception to the instruction after it was given.

■ The problem of the deputy's liability for malicious prosecution is more complex. The tort consists in initiating or procuring criminal proceedings, from an improper motive and without probable cause, against another who is not guilty of the offense charged, and who ultimately gains a favorable termination of the proceedings. *See, e.g., Rose v. Whitbeck,* 277 Or 791, 562 P2d 188 (1977), *modified,* 278 Or 463, 564 P2d 671 (1977); *Shoemaker v. Selnes,* 220 Or 573, 349 P2d 473, 87 ALR2d 170 (1960). This conventional listing of the elements described the traditional situation in which a private complainant sets the criminal law in motion against another person and a magistrate, grand jury, or prosecutor acts upon the charge as it is presented by the complainant. But strains appear in the formula when it is applied to an action against one who has official responsibility in the administration of criminal law but not to decide on the prosecution.

In this case, Officer Hill filed a "Crime Report" and two "Custody Reports" following the arrest of Curtis and Rogers and left further steps to others. The Custody Report on Curtis, signed by another officer who had been called to the scene, McDade, listed the charges of "harassment" and "resisting arrest"; Hill's report on Rogers listed "disorderly conduct." The Crime Report set forth the officer's version of the incident in some detail. In a box at the head of the

---

There had, however, been extensive colloquy between defendant's counsel and the trial judge before the jury was instructed, during which counsel made very clear his objection on the precise point now raised on appeal and the court made it equally clear that he disagreed with this point and would give the instruction despite defendant's objection.

The purpose of an exception is to let the court know that the party is not persuaded and to let the court take whatever corrective steps are then available. Like most procedural requirements, it is justified as an aid, not as an obstacle, to assuring a correct trial. In this case it is plain that the trial court was fully apprised of defendant's point and had made up his mind on the issue. Though an exception should properly have been taken, it would have been a mere formality and its omission did not prejudice plaintiff or affect the court's actions on the point at issue. Furthermore, no contention is made by plaintiff that defendant failed to take a proper exception to the instruction.

[ 497 ]

printed form Hill identified the "Type Offense" as "harassment." The body of the narrative stated that Hill had informed Curtis that he was under arrest for harassment and Rogers that he was under arrest "for his part in interferring with my taking custody of Mr. Curtis," and that Hill had told McDade that Rogers would be taken in "for the listed charges." These reports were placed in the work basket of Deputy Stewart, whose assigned task was to transmit such reports to the prosecutor. A deputy district attorney subsequently, upon the information in these reports but without further consultation with Hill, prosecuted Rogers on the charge of "resisting arrest" of which he was acquitted.

Defendant contends that on these facts he was entitled to a directed verdict because he did not initiate the prosecution actually brought. He cites *Humbert v. Knutson et al,* 224 Or 133, 354 P2d 826 (1960), for the rule that one who merely gives information on which a prosecutor makes an independent decision to charge an offense is not liable for instituting the prosecution. As there quoted from the second edition of Prosser's *Handbook of the Law of Torts,* the rule also applies when the authorities prosecute for an offense different from that presented by the private informant.[5] *Id.* at 138. For the general rule on prosecutorial discretion, *Humbert* also quoted the Restatement of Torts, § 653, Comment g (1938).[6] However, the Restatement quite explicitly deals only with the initiation of criminal proceedings by private informants;

[5] *See* W. Prosser, Handbook of the Law of Torts § 119, at 836-837 (4th ed 1971).

[6] Both Prosser and the Restatement of Torts 2d, for which he was the Reporter, limit the rule to information actually believed by the informant, on the theory that information known by the giver to be false prevents an intelligent exercise of official discretion. *See id.* That may be the effect of false information, but, as Professor Lacy pointed out after the decision in *Humbert,* this is logically independent of the moral quality of the informant's belief of its truth or falsity. Lacy, *Torts—1960 Oregon Survey,* 40 Or L Rev 278, 295 (1961).

and that is also the focus of the other sources discussing this problem.[7]

■ A law enforcement officer's role in initiating a prosecution is not identical to that of a private complainant, nor is the measure of his liability the same. Here we must distinguish between the issue of the "initiation" of a prosecution, which is essentially a question of the causal linkage between the defendant's acts and the start of the criminal process, and the different issue of a police officer's privilege for official acts which is not enjoyed by a private defendant. The extent of this privilege is unsettled, and since defendant does not invoke such a privilege, we express no view whether it would be available to him here.[8] But on the issue of "initiation" there can be no doubt that defendant set the criminal law in motion against plaintiff here. The complexity in the case results only from the fact that plaintiff was ultimately, and unsuccessfully, prosecuted on a legally different charge from that stated by defendant.

■ Even as a participant in the law enforcement process, an officer is no more liable than a private informant for a person's prosecution on charges quite different from those initiated by the officer. No doubt this measure of his responsibility for the ultimate prosecution may sometimes be difficult.[9] But it is not

[7]Restatement of Torts 2d, § 653, refers to a "private person who initiates or procures the institution of criminal proceedings." Comment g to this section speaks of a "private person who gives to a public official information of another's supposed criminal misconduct."

[8]The Restatement recognizes an absolute privilege for a public prosecutor, but not for a peace officer who acts on his own initiative, *id.* § 656 and Comment d, and defendant claims no privilege here. *See also* Prosser, *supra* note 6, § 119 at 837-838, and the conflicting view in this court in *Watts v. Gerking,* 111 Or 641, 222 P 318 (1924), *rev'd on rehearing,* 228 P 135 (1924). *See generally* Annot., 28 ALR2d 646 (1953).

[9]Prosecution for a lesser included offense, for instance, would seem attributable to the original report. *Cf. Frankfurter v. Bryan,* 12 Ill App 549 (1882), in which a justice of the peace had issued a "so-called mittimus" for disorderly conduct on a private complainant's accusation of larceny. The

difficult in this case. Deputy Hill's Crime Report, as quoted above, could be read to extend to a possible charge that Rogers participated in resisting Curtis's arrest as well as to the general charge of "disorderly conduct." Moreover, Hill was the primary prosecution witness in Rogers's trial on the charge of resisting arrest and there is no indication that he suggested to the prosecutor that this charge was inappropriate. An active part in continuing an unfounded criminal proceeding is sufficient for this tort. *See* Restatement of Torts 2d, § 655. Defendant's motion for a directed verdict was correctly denied.

■ ■ Defendant's remaining assignments of error complain that the jury was not instructed on what constitutes resisting arrest, the charge on which plaintiff was prosecuted, as defendant requested.[10] Defendant was entitled to have the jury consider whether plaintiff was in fact guilty of the offense for which he was prosecuted. Plaintiff's acquittal does not prevent retrial of that issue in the tort case. *Shoemaker v. Selnes, supra;* Restatement of Torts 2d, § 657, Comment a. This requires an instruction describing the charged offense for the jury when an issue of plaintiff's guilt is raised, as well as for the purpose of having the jury assess probable cause. The only instructions relating to this point merely told the jury that plaintiff must establish "that defendant acted without probable cause in initiating or procuring the prosecution of the plaintiff," and that "probable cause for the commencement of criminal proceedings comprehends the existence of such facts and circumstances which would

---

Illinois court said: "Who ever heard of a party being convicted, in any respectable court, of the offense of disorderly conduct, under an indictment for larceny?" and relieved the complainant of liability. *Id.* at 553. On the other hand, prosecution for an offense more serious than that originally charged, and one more difficult to prove, even if a related one, is less obviously the responsibility of the original informant. *Cf. Bennett v. Black,* 1 Stew. 494, 496 (Ala 1828).

[10] Respondent does not argue that there was no sufficient evidentiary basis for an instruction concerning his guilt or innocence, and we do not consider that question.

cause, in a reasonable mind, the honest belief that the person is guilty of the crime charged." This is too abstract without an explanation of the elements of the crime charged. The failure to explain these elements, when properly requested, was error. The case is remanded for a new trial.

Reversed and remanded.

Bryson, J., concurs in the result.

**TONGUE, J.,** specially concurring.

I agree with the majority that this case must be reversed and remanded for a new trial. I disagree, however, with the reasons given by the majority for its holding, with respect to the first cause of action for assault and battery, that the trial court erred in instructing the jury that "the only evidence in this case is that the defendant did strike the plaintiff * * *."

At the outset, the majority accepts plaintiff's contention that his testimony and that of his wife that he was struck in the face by defendant was "uncontradicted testimony" and says that the question to be decided is "whether and when the jury may be directed to give conclusive effect to the uncontradicted testimony of a proponent of a fact in issue." The majority then accepts as the law controlling in this case (i.e., a case in which the testimony is "uncontradicted") the rule as stated in *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962), including its emphasis upon the two factors of (1) the availability of evidence to contradict the "uncontradicted testimony" and (2) the likelihood that the witness's interest in the litigation might tempt him to testify falsely. That rule is then discussed at some length.

The majority then says that:

"The same factors are pertinent in this case. Whether they were correctly applied is a close question. Necessarily their application in a trial setting involves the

exercise of judgment by the trial court, but it is not a matter of discretion."

It is then stated by the majority that evidence to contradict plaintiff's testimony of the alleged striking "was not only readily but uniquely available to the defendant," but that he did not offer himself as a witness to contradict that testimony.

After thus holding that application of these two *Rickard* "factors" in this case presented a "close question" and that the application of such factors involves the exercise of "judgment" (for which a trial judge would not ordinarily be reversed in a "close case"), the majority then seems to have abruptly "changed the ending to the story" in then reversing the trial court upon the ground that "the jury in this case might have disbelieved plaintiff's version of the striking" in view of the "setting of emotional tension" and the fact that "there were differences between Officer Hill's written report and the testimony of Mr. and Mrs. Rogers on other aspects of the episode."

In my opinion, such a disposition of this case is so ambiguous and self-contradictory as to cause confusion among trial judges and lawyers as to the proper function of the jury, the trial judge and this court in cases in which testimony is alleged to be "uncontradicted" and the manner in which the *Rickard* rule is to be applied in such cases. It is also my opinion that this course of reasoning by the majority, at least as applied to the facts of this case, is patently wrong for at least two reasons:

(1) In holding that either a trial court or this court may, as a matter of "judgment," withdraw from the jury the issue of the credibility of the testimony of a witness in a case such as this, the rule adopted by the majority is contrary to the mandatory requirements of Art VII (Amended), § 3, of the Oregon Constitution and of ORS 17.250, 17.255, 41.310, 41.360 and 44.370 as applied to a case such as this, in which the opposing

[ 502 ]

party is entitled to the benefit of a statutory presumption.

(2) In any event, the rule of *Rickard* is not properly applicable to the facts of this case so as to give rise to any question of "judgment" by either a trial court or by this court to withdraw from the jury the credibility of the testimony of the plaintiff and his wife, because that testimony was not "uncontradicted testimony," so as to make either necessary or proper a consideration of the "factors" of "interest" and "availability" of evidence.

1. *The mandatory requirements of the Oregon Constitution and statutes as applied to cases involving presumptions.*

Article VII (Amended), § 3, of the Oregon Constitution was adopted by vote of the people of Oregon in 1910 as the result of what were then considered to be abuses by Oregon judges in setting aside jury verdicts with which they disagreed. No other state has adopted such a constitutional limitation upon the common law powers of the courts.

The mandatory provisions of Art VII, § 3, not only prohibit the Oregon courts from "re-examining" any fact found by a jury "unless the court can affirmatively say there is *no* evidence to support the verdict," but also prohibit the Oregon courts from withholding from the jury any issue of fact which, if submitted to the jury, could not be "re-examined" by the courts because of the presence of *some* evidence to support such a finding. This constitutional mandate is commonly regarded as of benefit primarily to plaintiffs on motions for nonsuit, directed verdict and judgment n.o.v. There are occasions, however, as in this case, when defendants are also entitled to its benefit as a matter of constitutional right.

In addition to the provisions of Art VII, § 3, of the Oregon Constitution, the Oregon legislature has enacted statutes including similar mandatory provi-

sions which expressly reserve various questions for exclusive determination by Oregon juries and which impose further limitations upon the common law powers of Oregon courts.

Among these statutory provisions are ORS 17.255, which provides that Oregon juries "are the exclusive judges of all questions of fact" and ORS 17.250, which provides as follows:

> "The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:
>
> "* * * * *
>
> "(2) *That they are not bound to find in conformity with the declarations of any number of witnesses,* which do not produce conviction in their minds, *against* a less number, or against *a presumption or other evidence* satisfying their minds;
>
> "* * * * *" (Emphasis added)

In Oregon presumptions are not mere procedural devices which disappear upon the offer of contrary evidence, as in some states. Instead, by reason of the express provisions of ORS 41.310, presumptions themselves constitute "indirect evidence."[1] As such, presumptions are entitled to be considered by juries as evidence in deciding issues of fact for the purposes of Art VII, § 3.

ORS 41.360 lists various disputable presumptions and provides that they "may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption." The first of these "disputable presumptions" is that "a person is innocent of crime or wrong." This presumption is not limited to criminal cases, but

---

[1] *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 598-99, 147 P2d 227 (1944). *See also U.S. National Bank v. Lloyds,* 239 Or 298, 382 P2d 851, 396 P2d 765 (1964).

extends to civil tort cases, including the "wrong" of negligence.[2]

It follows, by reason of these express constitutional and statutory provisions, that at least in the ordinary case, such as this, in which a party is entitled to the benefit of a statutory presumption, the jury is not bound to find in conformity with the testimony of any number of witnesses called by the opposing party, even though otherwise "uncontradicted."[3] It follows, conversely, that in such a case no Oregon court can withdraw such an issue from a jury or require it to find in conformity with such "uncontradicted" evidence.

In my opinion, there can be no escape from this conclusion because: (1) in Oregon, by statute, a statutory presumption is evidence; (2) by reason of Art VII, § 3, the Oregon courts must leave to juries the decisions of all questions of fact upon which there is evidence to support a finding by a jury, and (3) ORS 17.250(2) specifically provides that juries are not bound by "uncontradicted" testimony contrary to "a presumption or other evidence satisfying their minds."

That this result is required by reason of Oregon constitutional and statutory requirements is also made clear by the provisions of ORS 44.370, which provides as follows:

> "A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testified, by the character of his testimony, or by evidence affecting his character or motives, or by contradictory evidence. *Where the trial is by the jury, they are the exclusive judges of his credibility.*" (Emphasis added)

If it be said that such a result leaves the Oregon courts powerless in cases such as this to prevent or

---

[2] *Stage v. St. Pierre,* 224 Or 395, 399, 356 P2d 432 (1960). *See also Millar v. Semler,* 137 Or 610, 618, 2 P2d 233, 3 P2d 987 (1931).

[3] *See also, e.g., Graham v. Coos Bay R. & N. Co.,* 71 Or 393, 416, 139 P 337 (1914), and *White v. East Side Mill Co.,* 84 Or 224, 241-42, 161 P 969, 164 P 736 (1917).

correct "injustice" resulting from "mistakes" by juries in refusing to accept "uncontradicted" testimony, it should be noted that substantially the same contention was made some years ago with reference to the question whether, under Art VII, § 3, Oregon courts have power to prevent or correct "injustice" resulting from "excessive" verdicts by juries for damages for personal injuries. That contention was finally laid to rest by this court in an opinion by Justice Lusk in *Van Lom v. Schneiderman,* 187 Or 89, 210 P2d 461 (1949). The answer in both cases is that although juries may sometimes make mistakes, so do judges, and the voters and legislature of Oregon, by the constitutional and statutory provisions adopted by them, made a deliberate choice to confer upon juries the exclusive and final authority to resolve such questions and to remove from the courts power to either set aside such determinations by juries or to withhold such questions from juries for determination.

In *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962), the principal case relied upon by the majority and the leading Oregon case on the subject of "uncontradicted evidence," the jury in a personal injury case found that defendant was negligent, but that plaintiff had suffered no injuries. On appeal plaintiff contended that the evidence that he was injured was uncontradicted and that the trial court erred in refusing to resubmit the case to the jury. This court in *Rickard* rejected that contention and affirmed the verdict and judgment for the defendant.

In the course of its decision, however, this court (at 51) quoted with approval from *Ferdinand v. Agricultural Insurance Co.,* 22 NJ 482, 126 A2d 323 (1956), in its holding that in cases involving uncontradicted testimony such testimony may be so clear that "disbelief of the story could not reasonably arise," in which event the question is "for the court to decide and not the jury." In doing so, this court appeared to adopt a rule that is entirely proper in jurisdictions in which

[ 506 ]

the common law powers of courts to control what they consider to be "unreasonable" verdicts by juries has not been limited by constitution or statute, as in Oregon. No reference was made by this court in *Rickard* to the requirements of either Art VII, § 3, or of ORS 17.250, 17.255, 41.310, 41.360 or 44.370.

It is important to note, however, that no contention was made in *Rickard* that the defendant in that case was entitled to the benefit of any presumption, so as to constitute evidence to be considered by the jury in deciding whether to accept the uncontradicted testimony. On the contrary, plaintiff's "uncontradicted testimony" of her injury was opposed only by what this court referred to (at 53) as the possible *inference* from her failure to seek medical aid that she was not injured in the accident.

In other words, *Rickard* was a case in which the "uncontradicted testimony" was upon the issue of the existence and extent of plaintiff's injuries—an issue as to which defendant was not entitled to the benefit of any presumption, as would have been the case if the "uncontradicted evidence" was that defendant was negligent.

Thus, *Rickard* was a case in which it was arguable that the trial court had power to hold that the "uncontradicted testimony" should be "declared to be conclusive," as authorized by the first paragraph of ORS 17.250. It was not, however, a case subject to the express limitation on that power as set forth in subparagraph (2) of ORS 17.250, which specifically provides that a jury is not bound by any testimony which "[does] not produce conviction in *their* minds" as "against a *presumption* * * * satisfying their minds," so as to constitute evidence contrary to such testimony and thus require the application of Art VII, § 3.[4]

---

[4] It is also of interest to note that in *Palmer v. Van Petten Lbr. Co.,* 265 Or 347, 509 P2d 420 (1973), in which the majority of this court again discussed and reaffirmed *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962),

Nevertheless, this court in *Rickard* affirmed the refusal of the trial court to set aside the finding by the jury in that case that plaintiff suffered no injuries, despite the "uncontradicted" testimony to the contrary, and held that it was entirely proper to submit to the jury the question of the credibility of that testimony. Indeed, in the course of that holding this court noted (at 53) that it would not have been unreasonable for the jury to infer from plaintiff's conduct that she was not injured.

In this case, however, because the defendant is charged with an assault and battery upon the plaintiff, he is entitled to the benefit of the statutory presumption that he is "innocent of crime or wrong."[5] Also, testimony alleged to be "uncontradicted," i.e., the testimony of plaintiff and his wife that plaintiff was hit in the face by defendant, went to the basic liability issue of whether or not defendant had been guilty of such an assault and battery. It follows, in this case, by reason of the mandatory requirements of Art VII, § 3, ORS 17.250, 17.255, 41.310, 41.360 and 44.370, that even if such testimony by plaintiff and his wife was not directly contradicted by defendant, the trial court had no power to withdraw from the jury the issue of the credibility of such testimony because defendant was entitled to the benefit of that statutory presumption and to have the jury consider that presumption in

what was involved was the *inference* of agency in an automobile case, rather than any statutory presumption. The same was true of *Judson v. Bee Hive Auto Service Co.,* 136 Or 1, 294 P 588, 297 P 1050 (1931). In holding in *Palmer* that an "inference" may be overcome by "uncontradicted testimony" the majority of this court also cited and relied upon the concurring opinion by Justice Lusk in *Bunnell v. Parelius,* 166 Or 174, 111 P2d 88 (1941). In *Bunnell* it was stated (at 183), in discussing that inference of agency, that in *Judson* "* * * the court decided, as definitely as anything could be decided, that it was dealing not with a presumption of law, but with an inference of fact."

[5] The defendant in this case, as a police officer, was also entitled to the benefit of the statutory presumption that his "official duty [had] been regularly performed" (ORS 41.360(15)) and that "the law [had] been obeyed" (ORS 41.360(33)).

deciding whether or not to believe the testimony of plaintiff and his wife. In other words, to paraphrase ORS 17.250(2), the jury in this case "was not bound to find in conformity with the declarations" of plaintiff and his wife if such testimony did "not produce conviction in [the jury's] minds" as "against a presumption satisfying their minds," including the presumption that defendant was "innocent" of the "wrong" of an assault or battery upon the plaintiff.

It also follows that because of Oregon constitutional and statutory requirements the majority opinion in this case is in error in its holding that it was a matter of "judgment" for either the trial court or this court to decide whether or not to withdraw from the jury the credibility of such testimony.

There may be cases in which presumptions in Oregon may be overcome as a matter of law, such as cases involving admissions by the testimony of an adverse party,[6] by documents of undisputed authenticity,[7] or by physical demonstrations, as in the hypothetical case in which the presumption of the death of a person after an unexplained absence for seven years would be overcome if that person were to walk into the courtroom.[8] If, however, in that same hypothetical case, the "uncontradicted testimony" claimed to be sufficient to overcome that presumption consisted of the oral testimony of a witness that he had that very day seen the allegedly deceased person, the credibility of such testimony would still be a question for the jury in Oregon, by reason of Art VII, § 3 and ORS 17.250(2).

For all of these reasons, it is my firm opinion that there is no escape from the conclusion that in a case

---

[6] *See Smith v. McDuffee,* 72 Or 276, 281-82, 142 P 558, 143 P 929 (1914). *See also Wiebe v. Seely, Administrator,* 215 Or 331, 342, 335 P2d 379 (1959), and cases cited therein, although discussing the overcoming of inferences, rather than presumptions.

[7] *See Judson v. Bee Hive Auto Service Co., supra* n.4 (at 9), again in discussion of the overcoming of inferences, rather than presumptions.

[8] *See Judson v. Bee Hive Auto Service Co., supra* n.4 (at 14).

such as this, in which the testimony claimed to be "uncontradicted" consists of the oral testimony of a witness, but in which there is evidence to the contrary consisting of the "indirect evidence" of a statutory presumption, the credibility of such testimony must be submitted to the jury because the people and legislature of Oregon, by the constitution and statutory limitations imposed by them upon the common law powers of the Oregon courts, have deliberately chosen to confer upon the juries of this state the exclusive power to decide whether or not to believe and accept such testimony in such cases.

2. *The express limitations of the rule as stated in Rickard v. Ellis.*

Aside from the constitutional and statutory limitations imposed upon the Oregon courts in such cases, and assuming that the rule as stated in *Rickard v Ellis, supra,* may be properly applicable to this case, provided, of course, that its facts come within the limitations of that rule, it is nevertheless clear from the record in this case that the testimony of plaintiff and his wife was not "uncontradicted testimony" within the limitations of the rule as stated in *Rickard,* so as to make it proper for the majority to consider the two-fold "factors" to be applied in cases of "uncontradicted evidence," i.e., the "availability of evidence" and the "interest" of the witness.

*Rickard* (at 51) quotes *Ferdinand v. Agricultural Insurance Co., supra,* as stating the "correct principle" for application in cases in which it is contended that testimony is "uncontradicted." According to that "principle," a trial court may withdraw from the jury the question of the credibility of such testimony provided that such testimony satisfies the following requirements.

"\* \* \* [W]hen the testimony of witnesses, interested in the event or otherwise, is clear and convincing, *not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any*

[ 510 ]

*way by witnesses or circumstances,* and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind, * * *." (Emphasis added)

Thus, the mere fact that testimony is not directly contradicted by other testimony is not of itself sufficient.

In this case the testimony accepted by the majority as "uncontradicted" within the rule as stated in *Rickard* consists of testimony by plaintiff and his wife that plaintiff was hit by Officer Hill while plaintiff was holding down the arms of one Dender Curtis, so as to render him helpless, at which time Officer Hill came up and, without provocation or excuse, took a swing with his fist at Dender Curtis, who then "ducked."

With all due respect to the majority, it is my opinion that such testimony, even standing alone, is somewhat "incredible in the light of general knowledge and common experience." At the least, such testimony can hardly be said to be "not extraordinary."

On the contrary, just as it was held in *Rickard* that the credibility of the testimony of the plaintiff in that case was of such a nature as to be properly submitted to the jury, so also was this testimony of such a nature as to require that it be submitted to the jury because of those express requirements of the rule as stated in *Rickard,* even if such testimony had been given by a disinterested witness, and thus without need to proceed further to a consideration of the factors of "interest" and "availability of testimony."

It also appears upon a reading of the entire record that it cannot be properly contended in this case that the testimony by plaintiff and his wife was "not contradicted in any way by witnesses or circumstances," as also required by the rule as stated in *Ferdinand,* which was recognized in *Rickard* to be the "correct principle" for application in such cases. On the

contrary, this testimony by plaintiff and his wife was "contradicted" both by plaintiff's testimony on cross-examination and by the written report of this incident by Officer Hill, which was received in evidence when offered by plaintiff as a report which included Hill's "narration of what Mr. Rogers's involvement was in the episode."

Plaintiff testified on cross-examination that the incident in which he was "grazed on the side of the face" occurred "at the time [he] was trying to pull [Curtis] off" and when "they [Curtis and Hill] were hitting each other with closed fists." The jury could have properly found from this testimony that any "grazing" of plaintiff's cheek by Hill's fist, if it happened at all, happened when plaintiff interfered with Hill's previous attempt to arrest Curtis, at which time Curtis escaped and "ran away," and did not happen on the subsequent occasion when Curtis reappeared, even if Curtis was then "intercepted" by plaintiff and his wife, and that this testimony by plaintiff in and of itself contradicted plaintiff's story of the unprovoked assault by an officer of a helpless victim.

To the same effect, Officer Hill's report stated that his physical "scuffle" with Dender Curtis and plaintiff occurred when he first attempted to arrest Curtis after Curtis had slapped his face and thrown a lighted cigarette into it, at which time he "exited my vehicle and grasped the subject by the arm" and told him he was under arrest; that it was then that plaintiff "grabbed Mr. Curtis's left arm" and that in the ensuing "scuffle" Curtis "broke" Hill's "hold" and "fled." Officer Hill's written "narrative statement" goes on to say that after he then was unsuccessful in his attempt to arrest plaintiff for interfering with his arrest of Curtis, he radioed for assistance; that before help arrived "Curtis came back to the scene," with his right hand behind his back, stating that he was "going to shoot me. *Subject was THEN taken away by his*

*brother.*" The jury could have properly found from Officer Hill's written narrative report, contrary to plaintiff's testimony, that there was no physical encounter between Officer Hill and either Dender Curtis or plaintiff at that point; that plaintiff did not then "intercept" Dender Curtis and hold his arms down, and that Officer Hill did not then attempt to strike Curtis with his fists.

Finally, there was evidence in the record which directly impeached the credibility of plaintiff's testimony and from which the jury could have properly found that plaintiff's testimony of the attempt by Officer Hill to strike Curtis as he was being held helpless by plaintiff was not truthful. Both plaintiff and his wife testified under oath that at the time of this incident they did not know Dender Curtis, at least by name, and attempted to give the impression that this "gentleman" who they saw "walking up the walkway" was a stranger to them. On cross-examination, however, plaintiff admitted that Dender Curtis was one of a group of young men involved in a previous incident with the police, after which they all, including Curtis, went to the police or sheriff's office to complain of their treatment by the police. The jury could properly find from this admission that the other testimony by plaintiff and his wife was false.

Similarly, plaintiff's wife denied that plaintiff shouted any obscenities; that she heard any obscenities used toward the police, except that "Dender Curtis might have, but I don't remember what he said." Plaintiff also testified that he did not recall what was said or "hear" what was said when Dender Curtis was shouting at Officer Hill. To the contrary, the narrative report of Officer Hill is replete with reference to obscenities, not only by Curtis when he first approached Officer Hill's patrol car, but also by plaintiff. The jury could have properly believed Officer Hill's narrative report and have found that this testimony by plaintiff and his wife was also false.

[ 513 ]

Plaintiff also testified under oath that Officer Hill did not tell him to "stay out of it or he would be arrested" or that the affair between Officer Hill and Curtis was "none of [plaintiff's] business." This is also contrary to Hill's written narrative of the incident, which the jury could have believed, with the result that it could have properly found that this testimony by plaintiff was also untrue.

For all of these reasons, as well as the impression made upon the jury by plaintiff and his wife in their physical appearance and manner while testifying, the jury could properly have rejected as a complete falsehood their story of the unprovoked attempt by Officer Hill to strike a victim whose hands were being held down.

It follows, in my opinion, based upon examination of the entire record (which the majority does not undertake to summarize), that the testimony by plaintiff and his wife, even if given by disinterested witnesses, was not "uncontradicted testimony" within the limitations stated in *Ferdinand* and adopted in *Rickard.* It follows that defendant was entitled to have the credibility of that testimony submitted to the jury without the necessity of considering the "factors" of the "interest" of plaintiff and his wife and the availability of contrary evidence.

As previously noted, even in *Rickard* this court held that it was a jury question whether the "uncontradicted" testimony in that case was true. Such a result is also supported by the decisions of this court after *Rickard,* in which it has usually been held that uncontradicted testimony by interested witnesses, as in this case, does not preclude the jury from its traditional and proper function of "weighing" such testimony and of determining the credibility of such witnesses.[9]

---

[9] *See, e.g., Kraxberger v. Rogers,* 231 Or 440, 453, 373 P2d 647 (1962); *Schmitz v. Yant,* 242 Or 308, 318, 409 P2d 346 (1965); *Grubb v. Boston Old*

Despite all of this, the majority considers this case to be one of "uncontradicted" testimony and to present a "close question" requiring the exercise of "judgment" by the trial judge, apparently because Officer Hill did not give oral testimony in his own behalf, but was content to rely upon his written report, which was received in evidence upon offer by plaintiff as Hill's "narration" of the "episode." Indeed, the majority only reverses the trial court because of the "setting of emotional tension" and the "differences" in Hill's report "on other aspects of the episode."

On the contrary, and with all due respect to the majority, it is my firm opinion that this was not a "close case" calling for the exercise of either "judgment" or "discretion," but was a clear case in which the defendant was entitled, as a matter of right, to have the credibility of plaintiff's testimony submitted to the jury both (1) because of the express limitations imposed upon the Oregon courts in such cases by the constitution and statutes of Oregon and (2) because such testimony was not "uncontradicted testimony" within the requirements of the rule as stated in *Ferdinand* and as adopted in *Rickard.*

Lent, J., joins in this concurring opinion.

**HOWELL, J.,** dissenting in part.

I agree with the majority opinion that the trial court should not have instructed the jury that "the only evidence in this case is that the defendant did strike the plaintiff," because that was a question of fact for the jury to decide. However, no exception was taken by the defendant. It is axiomatic that without an exception the giving of the instruction would not constitute reversible error.

*Colony Ins.,* 257 Or 208, 212-13, 477 P2d 901 (1970); *Bezoff v. Crater Lake Motors, Inc.,* 259 Or 449, 452, 486 P2d 1274 (1971); *Coleman v. Meyer,* 261 Or 129, 136, 493 P2d 48 (1972); *Chopp v. Miller,* 264 Or 138, 143, 504 P2d 106 (1972); *Wattenburg v. United Medical Lab.,* 269 Or 377, 384, 525 P2d 113 (1974); *Streight v. Conroy,* 279 Or 289, 292, 566 P2d 1198 (1977).

Experience teaches that lawyers frequently contend for positions which they do not continue to pursue when the court rules against them. If a lawyer expects to be relieved of his obligation to take an exception to instructions given, it is usual at the time of any previous discussion of the point of law involved to ask the court whether an exception will be necessary at the time of instructions in view of the lawyer's already stated position on the subject. If we allow an automatic exception to every instruction upon a point of law to which counsel has taken a contrary position during trial, only chaos will result. In addition, this court has previously enforced this rule as one of efficient judicial administration without respect to whether opposing counsel has raised the issue on appeal of failure to except to the instruction.

If there had been a proper exception, then I would concur in the result reached by the majority.

Holman, J., joins in this dissent.