**David J. BARISH, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., an Ohio corporation, Defendant.**

**Civ. No. 92–1382–FR.**

United States District Court, D. Oregon.

Nov. 18, 1993.

Evelyn M. Conroy, Jolles, Sokol & Bernstein, Portland, OR, for plaintiff.

Richard F. Liebman, Scott J. Fortmann, Lane Powell Spears Lubersky, Portland, OR, for defendant.

## OPINION

FRYE, District Judge:

The defendant, United Parcel Service, Inc., moves the court for summary judgment on the claims of the plaintiff, David J. Barish, for negligence and malicious prosecution.

### UNDISPUTED FACTS

David J. Barish, a customer of United Parcel Service, Inc. (UPS), operates a business, Postal Alternatives, Inc., dba Mail Boxes, Etc., in Tigard, Oregon. Renee Ortega is a delivery driver for UPS. In September, 1991, Ortega's delivery route included the deliveries and the pickups at Postal Alternatives, Inc., dba Mail Boxes, Etc.

On September 18, 1991, Ortega called the UPS facility in Tualatin, Oregon while she was on her route and spoke with her supervisor, Mike Terry. Ortega told him that she had just made a delivery to Mail Boxes, Etc. and that Barish had become "handsy" with her during the delivery. Terry informed his UPS supervisor, George Pluchous, of this information.

Pluchous met with Ortega when she returned to the UPS facility. She appeared upset and told Pluchous that Barish had grabbed her hand, buttocks and breasts while she was delivering packages to his business. Pluchous decided that Ortega should go to St. Vincent's Hospital for medical attention. Ortega's husband, Mike Ortega, met Ortega and two of the UPS supervisors, Vince Blood and Terrie Schramm, at St. Vincent Hospital's Trauma Center. Ortega's husband was angry and told Blood that he had called the police and had been advised by the police that his wife should file criminal charges against Barish. Blood responded that he could not give Ortega any legal ad-

vice, and that any decision to file criminal charges had to be made by Ortega.

The following day, September 19, 1991, Ortega and her husband met with Sergeant Lonnie Branstetter of the Tigard Police Department. Ortega provided an extensive report regarding the assault. There is no evidence that anyone from UPS participated in the meeting between the Ortegas and Sergeant Branstetter.

Following the police investigation, Barish was indicted by a grand jury for sexually abusing Ortega while she was on her delivery route for UPS. The grand jury's indictment was based on the criminal complaint filed by Ortega against Barish. Barish denied Ortega's criminal charges. Eventually, the criminal charges against Barish were dismissed. Barish then brought this suit against UPS, alleging claims for malicious prosecution and negligence. UPS seeks summary judgment on these claims.

### APPLICABLE STANDARD

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ Special rules of construction apply to evaluating motions for summary judgment: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

### DISCUSSION

1. *Malicious Prosecution*

■ In his claim for malicious prosecution, Barish alleges that UPS brought criminal charges against him with malice and without probable cause. To prevail on this claim, Barish must prove 1) that UPS commenced a criminal proceeding against him; 2) that UPS lacked probable cause to commence the criminal proceeding; 3) that UPS acted with an improper motive; and 4) that the proceeding was terminated in his favor. *Rogers v. Hill*, 281 Or. 491, 497, 576 P.2d 328 (1978).

UPS argues that Barish cannot prove the first element of his claim for malicious prosecution because UPS had nothing to do with the decision of Ortega to file criminal charges against Barish; that Ortega's husband made the first contact with the Tigard Police Department; that Ortega then filed the criminal complaint against Barish during her off-duty time at UPS; and that no one from UPS ever contacted the police or encouraged Ortega to do so. Affidavit of Vince Blood, p. 2.

Barish states that Ortega filed the criminal charges against him while she was acting within the scope of her employment, but Barish offers no factual support for that statement other than the agreed-upon fact that Ortega was acting in accordance with the public policy of UPS against sexual harassment. Barish argues that even if Ortega had not been acting within the course and scope of her employment with UPS, when she accused Barish of sexual harassment, UPS ratified her conduct because 1) UPS did not discourage Ortega or her husband from filing criminal charges, and because 2) UPS cooperated with the district attorney during the grand jury investigation.

The motion of UPS for summary judgment is granted on Barish's claim for malicious prosecution. The undisputed facts establish that UPS did not initiate any criminal action or file any complaint against Barish. UPS cooperated with the police and the district attorney after Ortega filed a criminal complaint against Barish. Cooperating with the police and the district attorney does not amount to "initiating or procuring criminal proceedings" as required by *Rogers* to state a claim for malicious prosecution. *Rogers*, 281 Or. at 497, 576 P.2d 328.

Furthermore, there is no evidence that UPS is vicariously liable for Ortega's acts. *See G.L. v. Kaiser Found. Hosps., Inc.*, 306 Or. 54, 60–61, 757 P.2d 1347 (1988), or that UPS ratified Ortega's acts because UPS "took a keen interest" in the prosecution. UPS took no action on its own accord in the prosecution of Barish. In every instance, the involvement of UPS was limited to responding to requests by Ortega, the police, and the grand jury.

2. *Negligence*

In his claim for negligence, Barish alleges that Ortega has a long history of making false accusations of sexual abuse. Based upon this allegation, Barish alleges that UPS "negligently" allowed Ortega to come into contact with him and "negligently" failed to inform his criminal defense attorney and the police of Ortega's history of false charges.

Barish points to an incident involving Ortega and an individual named Dan Van Dyke at Northwest Hunting Supplies on January 19, 1991. Ortega had complained that Van Dyke unzipped her vest and put his arms around her. When the incident came to the attention of David Sexton, a UPS supervisor, he requested an interview with and a written statement from Ortega in order to investigate the matter. *See* Affidavit of David Sexton and attachments. At the time of the interview, Ortega produced a written statement explaining the incident pursuant to Sexton's request. Sexton then interviewed Van Dyke. Van Dyke admitted that he hugged Ortega. Sexton documented the interview with Van Dyke and closed his investigation.

The court concludes that the incident regarding Van Dyke is not an example of a false accusation. First, Ortega did not file any charges against Van Dyke or even complain to a supervisor about him. Sexton learned of the incident from a third party, not from Ortega. Second, it was Sexton, not Ortega, who pursued the issue. Sexton told Ortega that he had to investigate and directed Ortega to write a report on the incident.

Because there is no evidence that Ortega had a "history of making false charges," UPS could not have been negligent in retaining her as a route driver. Nor could UPS have negligently failed to divulge information about Ortega's history after she brought her charges against Barish.

Even if the Van Dyke incident could be construed as a "false charge," the court finds that UPS could not have foreseen that Ortega would make charges against Barish. An employer has a duty to use reasonable care in supervising and retaining its employees. *Chesterman v. Barmon*, 82 Or.App. 1, 4, 727 P.2d 130 (1986), *aff'd*, 305 Or. 439, 753 P.2d 404 (1988). An employer violates this duty if it continues to employ an employee with known dangerous propensities in a position where it is foreseeable that the employee will harm the plaintiff. *Id.* Here, as a matter of law, Barish cannot establish that UPS should have foreseen that Ortega would accuse Barish of sexual abuse. *See Carr v. U.S. West Direct Co.*, 98 Or.App. 30, 37, 779 P.2d 154, *rev. denied*, 308 Or. 608, 784 P.2d 1101 (1989) (plaintiff was sexually assaulted by a supervisor of defendant who had previously sexually harassed another employee; plaintiff's claim that defendant negligently retained the supervisor was rejected because defendant could not have foreseen the assault against the plaintiff).

Further, contrary to Barish's assertion, UPS may have been liable for retaliatory discharge if Ortega had been terminated after the Van Dyke incident. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) and O.R.S. 659.030 protect Ortega from retaliation for making complaints about pos-

sible sexual harassment. Section 2000e–3(a) makes it unlawful to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." Similar protection is provided by O.R.S. 659.030(1)(f). Ortega's statements about Van Dyke were protected by both statutes because they appeared reasonably based in fact. Ortega did not need to prove to UPS that Van Dyke actually violated Title VII or O.R.S. 659.030. *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir.1978).

▇ Barish argues that Ortega was involved in six or seven prior "unsubstantiated" claims of sexual harassment. The falsity of the prior complaints is the central element of Barish's claim against UPS. Of the six incidents listed in Barish's concise statement of material facts, Barish has failed to present any testimony to contradict Ortega's version of the incidents. Barish cannot avoid summary judgment by challenging UPS to substantiate Ortega's prior claims.

▇ Finally, Barish alleges that UPS negligently failed to disclose to Barish's attorney and the police Ortega's prior history of making false charges of sexual assault after Ortega filed her criminal complaint. Even if the court were to assume that UPS had any information about any history of making false charges, no duty existed on the part of UPS to disclose that information. No statutory or common law provision requires a private party to come forward and volunteer information relating to a criminal investigation. UPS was not required to contact the police or Barish's criminal defense attorney to help Barish defend against the criminal charges brought by Ortega. Further, UPS had no duty to divulge any information from Ortega's personnel file to Barish or to his attorney. That information is privileged and confidential.

## CONCLUSION

The motion of UPS for summary judgment (# 10) is granted. The court will file a judgment in favor of UPS and against Barish, and this case will be dismissed.